**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Daniel HOLLAND,**
**Defendant–Appellant.**

**No. 87–5716.**

United States Court of Appeals,
Eleventh Circuit.

July 12, 1989.

Theodore J. Sakowitz, Federal Public Defender, Lisa A. Rosenthal, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Leon B. Kellner, U.S. Atty., Linda Collins Hertz, Andrea M. Simonton, Sonia E. O'Donnell, Asst. U.S. Attys., Jonathan Goodman, Miami, Fla., for plaintiff-appellee.

Before CLARK and COX, Circuit Judges, and HENDERSON, Senior Circuit Judge.

CLARK, Circuit Judge:

David Holland, a citizen of Jamaica, was convicted of illegally entering the United States after being deported in violation of 8 U.S.C. § 1326. Relying on *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), the appellant challenges the validity of his prior deportation order. We affirm.

I

Holland, a Jamaican citizen, was indicted for illegally entering the United States. Because he had been previously deported, this reentry constituted a felony under 8 U.S.C. § 1326.[1] The appellant argues that

---

1. Section 1326 states in part:
Any alien who—
(1) has been arrested and deported or excluded and deported and thereafter

(2) enters, attempts to enter, or is at any time found in the United States ...
shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of

the prior deportation hearing violated due process because the Immigration Law Judge (ILJ) did not inform him of his right to representation by counsel, the availability of free legal services programs, his right to present evidence, to examine evidence against him, his right to appeal, and failed to read and explain the factual allegations against him.

Holland was previously deported in 1983. Prior to the hearing he was given two forms which explained some of his rights. Form I–214 gave notice that Holland had the right to be represented by counsel and included a list of available free legal services groups. Form I–221S, which ordered the appellant to appear at the hearing, explains on the back that a respondent has the right to be represented by counsel, to present evidence, to cross-examine witnesses, and to object to evidence. The form also specifically informed the respondent to bring any relevant witnesses or documents to the hearing. Holland signed both these forms.

Holland's signature on Form I–221S also indicated that he had received Form I–618 which explained his right to appeal. Form I–618 states that if the respondent is not satisfied with the ILJ's decision, he may appeal to the Board of Immigration Appeals within ten days. The form indicates the procedure for filing an appeal including the fact that the respondent may be represented by counsel. Finally, the form states that during the pendency of the appeal the respondent will not be deported. This form was also designed to permit a waiver of the right to appeal if signed by the deportee. Holland did not sign this section of the form. However, in his written decision, the ILJ scratched out the word "Reserved" leaving the word "Waived" in the space marked "Appeal."

The transcript of the deportation hearing, which was a group hearing, was introduced in the district court. The ILJ began the hearing by stating that he was advised that the deportees had waived their right to counsel and asked "Is that correct?" No response is indicated. The transcript also

does not include any discussion of the deportees' rights at the hearing or their right to appeal or apply for suspension of deportation. The ILJ did personally interview Holland concerning the factual allegations against him and gave him a chance to respond. The ILJ then stated that he had established the deportability of each of the respondents. He then individually addressed Holland and stated "there being no application for release, the following orders will be entered: Mr. Holland, I order you deported to Jamaica."

Holland argued to the district court that the indictment should be dismissed because of errors at the prior deportation hearing. The district court referred the matter to a United States Magistrate who found that the prior deportation hearing did not violate due process. The district court held a de novo evidentiary hearing and after reviewing the documents from the appellant's immigration file, determined that the prior deportation hearing did not violate due process. Holland pleaded guilty to violating section 1326 but reserved the right to appeal the district court's determination that his previous deportation was not fundamentally unfair.

## II

In *United States v. Mendoza–Lopez*, the Supreme Court held that in a prosecution under 8 U.S.C. § 1326, a defendant may collaterally attack the legality of the prior deportation. 481 U.S. at 836, 107 S.Ct. at 2154. In *Mendoza–Lopez*, the defendant was deported after a mass hearing at which the ILJ did not ensure that each of the respondents understood their rights. The Eighth Circuit concluded that a defendant was entitled to collaterally attack a prior deportation because a prior *lawful* deportation was an essential element of a violation of section 1326. *U.S. v. Mendoza–Lopez*, 781 F.2d 111, 112 (8th Cir.1985). The Supreme Court rejected that decision holding that the statute does not require that the prior deportation be lawful. 481 U.S. at 834–38, 107 S.Ct. at 2153–54. The

not more than two years or by a fine of not more than $1,000, or both.

Court did hold, however, that a defendant could collaterally attack a prior deportation that was the result of a fundamentally unfair deportation proceeding when the facts show that he was deprived of judicial review of the deportation order. *Id.* at 836–41, 107 S.Ct. at 2154–56.

This is the first case in which this court has been called upon to apply the holding in *Mendoza–Lopez.* The precise scope of collateral attack is somewhat unclear because in *Mendoza–Lopez* the government conceded that the prior deportation was fundamentally unfair. 481 U.S. at 837, n. 14, 107 S.Ct. at 2154 n. 14. Thus the question before the Court was whether "a court may impose a criminal penalty for reentry after *any* deportation, regardless of how violative of the rights of the alien.... " *Id.* at 837, 107 S.Ct. at 2154. The Court held that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." *Id.* (citations omitted).

■ *Mendoza–Lopez* therefore requires two factors to be present to allow a criminal defendant to successfully collaterally attack a prior deportation order. The defendant must show that he was deprived of judicial review of the proceeding and that the proceeding was fundamentally unfair. *See United States v. Palacios–Martinez,* 845 F.2d 89, 91 (5th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 119, 102 L.Ed.2d 92 (1988). Although the Fifth Circuit in *Palacios–Martinez* treated these two factors as distinct requirements, we believe they are intertwined. It may be that the errors at the hearing combined with the lack of judicial review render a proceeding fundamentally unfair. *See id.* at 94 (Thornberry, J., concurring).

■ We think that the peculiar posture of *Mendoza–Lopez* when it was presented to Supreme Court accounts for the Court's emphasis on the denial of judicial review. We think it is implicit in the opinion that whatever errors occurred must render the proceeding fundamentally unfair. We disagree with Judge Thornberry's suggestion that the denial of judicial review *alone* renders the proceeding fundamentally unfair. *See id.* at 94 (Thornberry, J., concurring). However, we do agree that if a defendant is denied judicial review, a court must look closely at the proceeding on a collateral attack to ensure that no errors seriously prejudiced the defendant. *See id.*

The *Mendoza–Lopez* Court declined to enumerate the errors which would render a deportation hearing fundamentally unfair because the government did not appeal the lower court's finding that the procedures in that case were unfair. 481 U.S. at 839 & n.17, 107 S.Ct. at 2155 & n.17. Caselaw, however, indicates that fundamental unfairness requires a showing that specific errors prejudiced the defendant. The prejudice need not rise to the level of showing that the defendant would not have been deported, but rather that the errors might have affected the outcome of the hearing. *See United States v. Zaleta–Sosa,* 854 F.2d 48, 52 n.5 (5th Cir.1988); *United States v. Saucedo–Velasquez,* 843 F.2d 832, 835 n.4 (5th Cir.1988); *United States v. Polanco–Gomez,* 841 F.2d 235, 237 (8th Cir.1988); *United States v. Nicholas–Armenta,* 763 F.2d 1089, 1091 (9th Cir.1985); *cf. United States v. Cerda–Pena,* 799 F.2d 1374, 1379 (9th Cir.1986) (violation of regulations requiring alien to be informed of right of representation and right to contact consul did not prejudice him because no showing that proceeding would have been materially affected); *United States v. Rangel–Gonzales,* 617 F.2d 529, 532 (9th Cir.1980) (evidence showed that failure to inform respondent of his right to contact Mexican consul prejudiced him because he could have applied for voluntary departure rather than deportation). For example, we have held in the context of direct judicial review of a deportation order that the failure to tell the deportee of his right to counsel prejudiced the deportee when her status in the United States was dependent on untangling a confusing maze of state and federal law. *Partible v. INS,* 600 F.2d 1094, 1096–97 (5th Cir.1979). In *Cobourne v. INS,* 779 F.2d 1564, 1566 (11th Cir.1986), we distinguished *Partible* and found that the denial of coun-

sel did not deny Cobourne of a fair hearing because the presence of counsel would not have affected the case. *See also Ka Fung Chan v. INS,* 634 F.2d 248, 258 (5th Cir. 1981); *Villanueva–Jurado v. INS,* 482 F.2d 886 (5th Cir.1973); *accord Delgado–Corea v. INS,* 804 F.2d 261, 263–64 (4th Cir.1986).

### III

■ Holland argues that the ILJ's performance in this group hearing rendered the procedure fundamentally unfair. The ILJ did not specifically advise the respondents, individually or in a group, of their rights as required by 8 C.F.R. § 242.16(a).[2] However, the evidence indicates that Holland received information about these rights before the hearing. The government argues that even if this notice was inadequate, the hearing did not violate due process.

Under *Mendoza–Lopez,* the first inquiry is whether the defendant was denied judicial review. There is conflicting evidence as to whether the appellant knowingly and voluntarily waived his right to appeal. The evidence shows that he received written notice of his appeal rights, but that he never signed a written waiver. On the other hand, the ILJ noted on the written deportation decision that the appellant had waived his right to appeal. Recognizing that the facts conflict, both the government and the appellant argue that the other party has the burden to prove the validity or invalidity of any waiver. The district court found it conclusive that in the face of the government's evidence that he waived his appeal rights the appellant did not take the stand or produce any evidence to show that he did not knowingly waive his right to appeal. We need not address the issue of the burden of proof, however, because we find that the errors complained of did not render the proceeding fundamentally unfair.

Assuming that Holland did not waive his right to appeal and was not apprised of his other rights at the hearing, he has not alleged how the result would have been any different if he had been represented by counsel or presented evidence. Nor does he allege that if he had known of his right to appeal, there is any chance that the result would have been different. He only cites *Partible* for the proposition that the denial of counsel can prejudice the deportee. However, the facts in *Partible* clearly demonstrated the possibility of prejudice. Partible was caught in a maze of federal and state law and her status in the country required untangling that maze. Counsel therefore could have made a difference in her status. Holland produces no evidence to show that counsel could have made a difference to his status. Although Holland fleetingly mentions in his brief that he may have been entitled to apply for suspension of deportation, we do not find that the failure to advise him of this right rendered the proceeding fundamentally unfair. Suspension of deportation, which allows a deportee to voluntarily leave the country rather than be deported, is within the discretion of the Attorney General and is only available to individuals who have resided in the country for seven years and are of good character. 8 U.S.C. § 1254(a). Holland specifically abandoned this argument before the district court. Moreover, because Holland had a criminal record in this country, we seriously doubt that he would have been allowed to voluntarily depart from the country.

Since the appellant has not shown that his prior deportation hearing was fundamentally unfair nor shown any prejudice by the claimed unfairness, his conviction for reentering the United States after being deported in violation of 8 U.S.C. § 1326 is AFFIRMED.

---

**2.** The regulations also require the ILJ to require the respondent to "state then and there whether he desires representation." 8 C.F.R. § 242.16.