**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 6 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellant,

v.

RICARDO AGUIRRE-TELLO,

       Defendant - Appellee.

No. 02-2049

---

**ON REHEARING EN BANC**
**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CR-01-0284-MV)**

---

Laura Fashing, Assistant United States Attorney, Albuquerque, New Mexico
(David C. Iglesias, United States Attorney, Albuquerque, New Mexico, and
Peter S. Levitt, Assistant United States Attorney, Las Cruces, New Mexico, on the
briefs), for Plaintiff - Appellant.

Felipe D.J. Millan, El Paso, Texas, for the Defendant - Appellee.

---

Before **TACHA,** Chief Judge, **HOLLOWAY, SEYMOUR, ANDERSON,
EBEL, KELLY, HENRY, BRISCOE, LUCERO, MURPHY, HARTZ,
O'BRIEN, McCONNELL, and TYMKOVICH,** Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

The United States appeals from an order of the district court dismissing the indictment against defendant/appellee Ricardo Aguirre-Tello, charging him with illegal re-entry into the United States after having been deported, in violation of 8 U.S.C. § 1326(a), (b)(2). The district court dismissed the charge after concluding that Aguirre-Tello's underlying deportation proceeding had been fundamentally unfair. A divided panel of this court affirmed.

We granted the government's petition for rehearing en banc, with particular attention to the following two questions: (1) whether Aguirre-Tello had a constitutional right to be informed of discretionary relief in the form of a waiver from deportation that might be available to him; and (2) whether he had established that deficiencies in his deportation proceeding caused him prejudice, defined by the panel majority as a reasonable probability that he would have received a waiver from deportation had he applied for one. Answering both questions in the negative, as well as addressing the remaining arguments made to the original panel, we now reverse the judgment of the district court and remand for further proceedings.

**BACKGROUND**

Aguirre-Tello was born in Mexico in 1969. He testified before the district court that he first came to the United States with his parents in 1973, and his

-2-

attorney told the district court that he had been in this country ever since. He was not in this country legally, however, until August 1987, when he was granted an immigration visa.

In November 1989, Aguirre-Tello was convicted in California state court of attempted murder, and was sentenced to a term of nine years, of which he served just under five years. Upon his release from prison in 1994, the Immigration and Naturalization Service commenced deportation proceedings against him.[1] A deportation hearing was held before an Immigration Judge ("IJ") on August 19, 1994, in El Centro, California. There were twenty potential deportees present at the hearing, and Aguirre-Tello was one of three who indicated that they spoke English and wanted their hearings conducted in English.

The IJ began by determining that all of the potential deportees understood that the purpose of the hearing was to determine if the charges in their cases were true and that each one would be asked to admit or deny the charges against him or her. Thus, the IJ asked, "Even if the charges are proven [that] doesn't mean you must be deported; you might be eligible for some pardon or for asylum. If you are eligible for a pardon, I will tell you. Do you understand the purpose for this hearing?" The group of potential deportees, including Aguirre-Tello, responded,

---

[1] On March 1, 2003, the INS ceased to exist as an independent agency within the Department of Justice and its functions were transferred to the newly formed Department of Homeland Security.

"yes." Appellant's App. at 7.[2] The IJ then informed the potential deportees that they had a right to be represented by counsel:

> At this hearing, you can have an attorney, but the government won't pay for your attorney. You each have a list of free legal services. If you haven't had time to consult with an attorney, I'll postpone your case. But you don't have to have an attorney; you have the right to represent yourself. Do you understand your right to be represented?

Id. at 7-8. Aguirre-Tello and the others responded, "yes." Id.

> Later, the IJ further advised the potential deportees of their rights:
>
> THE COURT: Do any of you want more time to get a lawyer? And if you do, raise your hand. There are no hands. So we'll continue with each of you representing yourself. If you represent yourself, you should know that you can listen to and ask questions of any witness the government calls and look at anything the government gives me to consider against you. You can object to the government's evidence by explaining to me why you disagree with it. You can call witnesses to testify for you and show me anything you believe is important to your case. You can testify and tell me your story in your own words. Do you understand these rights?
> DEFENDANTS: Yes.
> THE INTERPRETER: Yes, by all responses.
> THE COURT: If you disagree with my decision, you can appeal. Your right to appeal is explained on the same paper that lists the legal services. By an appeal, you ask a higher court to review what I've done and determine if I've made a mistake. Do you understand your right to appeal?
> DEFENDANTS: Yes.
> THE INTERPRETER: By all respondents, yes.

---

[2]The hearing was taped but the tape was not immediately transcribed. The transcription that is a part of the record on appeal was done by a New Mexico court reporting service from the tape of the hearing, presumably around the time of the district court hearing, although the date of the transcription is not provided.

Id. at 13-14.

Later in the hearing, the IJ addressed Aguirre-Tello individually. After determining that Aguirre-Tello did not have an attorney, the IJ asked if he wanted more time to get an attorney. Aguirre-Tello said no. Aguirre-Tello affirmed that he understood his rights and that he understood the charges. He also admitted that he was a citizen of Mexico, that he had entered the United States as an immigrant in August 1987, and that in November 1989 he had been convicted of attempted murder in Los Angeles County, California. Aguirre-Tello also stated that he had been sentenced to nine years in prison and had served 63 months.[3]

As the colloquy between the IJ and Aguirre-Tello continued, Aguirre-Tello testified that he was born in Mexico, that neither of his parents was an American citizen at the time, that he had received a "green card" but had never applied for citizenship, and that he had lived in the United States for the last seven years. At that point, the IJ evidently realized that it had been seven years less one day since

---

[3]If Aguirre-Tello had actually served more than five years in prison, he would not have been eligible for the waiver of deportation discussed at length in this opinion. See Immigration and Nationality Act § 212(c) (INA), 8 U.S.C. § 1182(c) (1994) (repealed effective Sept. 30, 1996). It appears that Aguirre-Tello spent some period of time in pretrial detention, although it is unclear how much time he spent in such detention and whether that time was included in the 63 months he spent in prison. In any event, although the government belatedly argues this point on rehearing en banc, it did not pursue this issue in the district court or on appeal to the panel. Because the government raises this issue too late, and the district court made no factual findings regarding it, we have no determination by the district court to review, and we do not address the matter.

Aguirre-Tello had been permitted to enter the United States legally, which meant that, under the law then in effect, he would be eligible the next day to apply for a discretionary "waiver" from deportation. Accordingly, the following exchange occurred between the IJ and Aguirre-Tello:

> THE COURT: Okay. You are not today eligible for a pardon, but you would be tomorrow. Do you want your case postponed to see if you might be granted a pardon and allowed to remain in this country?
> DEFENDANT AGUIRRE: No.
> THE COURT: All right. If I order you deported then, to what country do you want to go?
> DEFENDANT AGUIRRE: Mexico.
> THE COURT: Do you know, sir, that if you're deported, that you'll lose your status in this country and you could not return except with a visa and proper permission from the Attorney General?
> DEFENDANT AGUIRRE: I do.
> . . . .
> THE COURT: And do you know that your crime would make you ineligible for a visa to come back to the US?
> DEFENDANT AGUIRRE: I do.
> THE COURT: So that if you want to stay in the US, this is the time to, shall we say, fight it out and try to remain; do you understand that?
> DEFENDANT AGUIRRE: I understand.
> THE COURT: Now that you know all that, do you want to apply for a pardon?
> DEFENDANT AGUIRRE: No.
> THE COURT: Why not?
> DEFENDANT AGUIRRE: I want to voluntarily return to my country.
> THE COURT: Okay. Well, there's no voluntary return available in a case like this, but are you saying you just want to go back?
> DEFENDANT AGUIRRE: That's it.
> THE COURT: All right. Based on your statements to me, I find that you've knowingly, voluntarily and intelligently waived your opportunity for relief. And I order you deported to Mexico. You can appeal. Do you want to appeal?

DEFENDANT AGUIRRE:  No.

THE COURT:  Then my decision's final.  Good luck, sir.

Id. at 24-26.  Aguirre-Tello was accordingly deported to Mexico.

As alleged in the indictment in this case, Aguirre-Tello was found in Dona Ana County, New Mexico, on or about February 10, 2001.  He had not received permission from the United States Attorney General to apply for admission into this country following his 1994 deportation.  Aguirre-Tello moved to dismiss the indictment, alleging that the 1994 deportation proceeding was fundamentally unfair and invalid under due process grounds.

At the time of Aguirre-Tello's deportation hearing, in 1994, an alien who was otherwise subject to deportation who had been lawfully in this country for seven consecutive years could apply for a discretionary waiver from deportation.  INA § 212(c), 8 U.S.C. § 1182(c) (1994) (repealed effective Sept. 30, 1996) ("Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General. . . .").  Although the statute referred to persons who temporarily leave the United States, it has been held that the § 212(c) waiver is equally applicable to permanent residents who have never left.  See INS v. St. Cyr, 533 U.S. 289, 295 (2001).

The district court concluded that Aguirre-Tello's due process rights were violated in the 1994 deportation proceeding because the IJ used the term "pardon" instead of "waiver" and thereby failed to convey adequately to Aguirre-Tello the nature of the discretionary relief for which he could apply the next day. The district court also found that Aguirre-Tello had not been given a list of free legal services prior to the 1994 deportation hearing, nor had he been advised then that his bond had already been set at $20,000 and that these errors "further exacerbate[d] the constitutional deficiencies of the deportation proceeding." Mem. Op. and Order at 8, Appellant's App. at 181. The district court further noted that Tenth Circuit precedent requires that a defendant in these circumstances show not only that the underlying deportation proceedings had been fundamentally unfair, but also that the deficiencies in the proceedings caused him prejudice. After noting that there were slight differences between the Ninth and Tenth Circuit standards for prejudice,[4] the district court concluded that Aguirre-Tello had shown prejudice under any standard.

The court also concluded that Aguirre-Tello was not precluded from attacking the deportation order by his failure to take a direct appeal. Citing United States v. Mendoza-Lopez, 481 U.S. 828, 840 (1987), it found that a waiver

---

[4]The deportation proceeding took place in California, which is within the Ninth Circuit.

of appeal rights that is not "considered or intelligent" improperly deprives the person of judicial review of the deportation order. The court found that Aguirre-Tello's waiver had not been considered and intelligent because the most likely avenue of relief, for which he was to be eligible one day later, had not been explained to him.

## DISCUSSION

When a previous deportation proceeding is attacked on constitutional grounds, we are presented with a mixed question of law and fact, which we review de novo. United States v. Rangel de Aguilar, 308 F.3d 1134, 1137 (10th Cir. 2002); United States v. Meraz-Valeta, 26 F.3d 992, 997 (10th Cir. 1994). The defendant has the burden of showing that the underlying deportation hearing was fundamentally unfair, and to do so he must show that he was prejudiced. Id. at 998. As part of this showing, he must establish that the unfairness of the deportation proceeding deprived him of his right of direct appeal. Id. We must afford the deportation proceeding a "presumption of regularity." United States v. Arevalo-Tavares, 210 F.3d 1198, 1200 (10th Cir. 2000).[5]

---

[5]The government argued to the previous panel in this case that judicial review of Aguirre-Tello's 1994 deportation proceeding is barred by Aguirre-Tello's failure to exhaust administrative remedies which were available to him then, a requirement Congress imposed in 1996 and which is codified at 8 U.S.C.

(continued...)

## I. Right to be informed of § 212(c) relief

### A.

We consider first the initial question upon which the petition for rehearing en banc was granted, whether Aguirre-Tello had a constitutional right to be informed of discretionary relief that might be available to him. We hold he did not.

We begin with the undisputed proposition that a potential deportee is entitled in his deportation proceeding to procedural due process under the Fifth Amendment, designed to ensure that the proceeding is fundamentally fair. Deportation proceedings are, of course, civil proceedings, not criminal ones, "and various constitutional protections associated with criminal proceedings therefore are not required." Michelson v. INS, 897 F.2d 465, 467 (10th Cir. 1990) (citing INS v. Lopez-Mendoza, 468 U.S. 1032, 1038-39 (1984)). The Supreme Court has not further defined what fundamental fairness requires in a civil deportation proceeding context, but it has suggested that it prohibits "procedural errors . . . so

---

[5](...continued)
§ 1326(d). The district court held that § 1326(d) did not bar Aguirre-Tello's collateral challenge to his deportation proceeding because, inter alia, the government had not raised the issue and the due process violations the court found in Aguirre-Tello's deportation proceeding effectively prevented Aguirre-Tello from exhausting his administrative remedies. Our disposition of this case renders it unnecessary for us to address the exhaustion argument.

fundamental that they may functionally deprive the alien of judicial review."

United States v. Mendoza-Lopez, 481 U.S. 828, 839 n.17 (1987).

We have stated that "[w]hen facing deportation . . . aliens are entitled to procedural due process, which provides an opportunity to be heard at a meaningful time and in a meaningful manner." Aguilera v. Kirkpatrick, 241 F.3d 1286, 1292 (10th Cir. 2001) (quotations and citations omitted). Aguirre-Tello received that, and he was entitled to nothing more. We agree with the majority of other circuits which have addressed the issue and concluded that there is no constitutional right to be informed of the existence of discretionary relief for which a potential deportee might be eligible. See United States v. Lopez-Ortiz, 313 F.3d 225, 231 (5th Cir. 2002), cert. denied, 537 U.S. 1135 (2003) ("[E]ligibility for § 212(c) relief is not a liberty or property interest warranting due process protection, [and therefore] the Immigration Judge's error in failing to explain [the deportee's] eligibility does not rise to the level of fundamental unfairness."); see also Smith v. Ashcroft, 295 F.3d 425, 430 (4th Cir. 2002) (holding that "the discretionary right to suspension of deportation does not give rise to a liberty or property interest protected by the Due Process Clause"); Oguejiofor v. Attorney General, 277 F.3d 1305, 1309 (11th Cir. 2002) ("Under our precedent, an alien has no constitutionally-protected right to discretionary relief or to be eligible for discretionary relief."); Escudero-Corona v. INS, 244

-11-

F.3d 608, 615 (8th Cir. 2001) ("Eligibility for suspension is not a right protected by the Constitution. Suspension of deportation is rather an act of grace that rests in the unfettered discretion of the Attorney General."); Ashki v. INS, 233 F.3d 913, 921 (6th Cir. 2000) ("Eligibility for suspension is not a right protected by the Constitution. Suspension of deportation is rather an 'act of grace' that rests in the 'unfettered discretion' of the Attorney General. Because suspension of deportation is discretionary, it does not create a protectible liberty or property interest.") (quoting Appiah v. INS, 202 F.3d 704, 709 (4th Cir. 2000). But see United States v. Muro-Inclan, 249 F.3d 1180, 1184 (9th Cir. 2001) ("[W]hen the record before the [IJ] raises a reasonable possibility of relief from deportation under this provision, it is a denial of due process to fail to inform an alien of that possibility at the deportation hearing." (quotation omitted) (citing United States v. Aerate, 224 F.3d 1076, 1079 (9th Cir. 2000))); cf. United States v. Roque-Espinoza, 338 F.3d 724, 730 (7th Cir. 2003) (considering without deciding whether there is a distinction "between an alien's claim that she has a right to seek discretionary relief, and the very different claim that she has a right to have that discretion exercised in a particular way"); United States v. Perez, 330 F.3d 97, 104 (2d Cir. 2003) (finding deportation proceeding fundamentally unfair when ineffective assistance of counsel resulted in an alien who was "eligible for § 212(c) relief and could have made a strong showing in support of such relief"

failing to apply for waiver). Accordingly, the IJ's failure to specifically advise Aguirre-Tello that he could be eligible for § 212(c) relief the following day was not a constitutional violation.

**B.**

Even assuming, arguendo, that there was some obligation to inform Aguirre-Tello of his right to a § 212(c) waiver, we hold that the IJ fulfilled it. We begin by noting that there is no dispute that Aguirre-Tello understood English, having lived in the United States since the age of four. Indeed, he was one of three potential deportees who specifically asked to have the hearing conducted in English. The IJ directly and individually told Aguirre-Tello, "You are not today eligible for a pardon, <u>but you would be tomorrow</u>. Do you want your case postponed to see if you might be granted a pardon <u>and</u> allowed to remain in this country?" Appellant's App. at 24 (emphasis added). Aguirre-Tello responded "[n]o" when asked if he wanted his case postponed so he could be "allowed to remain in this country." Id.

After explaining to him the consequences of being deported, which Aguirre-Tello stated three times he understood, the IJ then told him, "<u>So that if you want to stay in the US</u>, this is the time to, shall we say, fight it out and <u>try to remain</u>; do you understand that?" Id. at 25 (emphasis added). Aguirre-Tello responded, "I understand." Id. The IJ then said, "Now that you know all that, do

-13-

you want to apply for a pardon?" to which Aguirre-Tello replied, "[n]o." Id. The IJ then specifically asked him why not, to which Aguirre-Tello said, "I want to voluntarily return to my country." Id. The IJ inquired one more time: "[A]re you saying you just want to go back?" to which Aguirre-Tello replied, "[t]hat's it." Id. at 26.

While the IJ twice referred to seeking a "pardon," the IJ made it abundantly clear that the possibility under consideration was that Aguirre-Tello would be allowed to remain in the United States and avoid deportation. That is precisely the result Aguirre-Tello would have obtained if he successfully sought a waiver of his deportation. Aguirre-Tello was adamant, however, that he wished to return to Mexico. From that colloquy and the surrounding circumstances, we hold that Aguirre-Tello was adequately informed that he would be eligible the next day to seek avoidance of deportation and that he knowingly and willingly declined to pursue that opportunity.

The district court found that, notwithstanding Aguirre-Tello's stated desire to return to Mexico, that obvious intention should be disregarded because Aguirre-Tello was misled and confused by the IJ's use of the word "pardon" instead of the correct term, "waiver." We disagree. The district court characterized a "pardon" as "commonly understood to be a rare act of forgiveness by an executive authority." Mem. Op. and Order at 7, id. at 170. In fact, both a

-14-

pardon and a § 212(c) waiver are acts of grace, left to the complete and unfettered discretion of the one from whom they are sought. "Suspension of deportation is . . . an act of grace that rests in the unfettered discretion of the Attorney General." Escudero-Corona, 244 F.3d at 615 (quotation omitted); Ashki, 233 F.3d at 921.

We therefore disagree with the district court's conclusion that there was any meaningful difference between the availability of a "pardon" and the availability of a § 212(c) waiver. Moreover, we hold that Aguirre-Tello's understanding that it was a discretionary *waiver* he could have sought, as opposed to a *pardon*, would not have made one iota of difference to him. Aguirre-Tello understood that he could seek to avoid deportation, but he knowingly and clearly chose not to. Thus, to the extent the IJ had any obligation to inform Aguirre-Tello of the existence of the § 212(c) waiver for which Aguirre-Tello could presumably have applied the following day, the IJ adequately discharged that obligation.

## II. List of legal services and existence of bond

### A.

In addition to holding that the IJ violated Aguirre-Tello's due process rights by failing to inform him of the possibility of the § 212(c) waiver, the district court also found two other deficiencies in the deportation proceeding,

-15-

each of which the court held was an additional due process violation rendering the proceeding fundamentally unfair. One of the purported deficiencies—that Aguirre-Tello was not given a list of free legal services prior to his deportation hearing—is unsupported by the record.[6]

---

[6]We conclude that the district court's finding that Aguirre-Tello was not given a list of free legal services is clearly erroneous. The IJ specifically stated to Aguirre-Tello and the other potential deportees, "You each have a list of free legal services." Appellant's App. at 7-8. There is no indication that anyone present denied having that list. The IJ referred to the list again, stating, "Your right to appeal is explained on the same paper that lists the legal services." Id. at 13-14. When asked following that statement if they understood their right to appeal, all the potential deportees responded, "Yes." Id. Unless we are to disregard the presumption of regularity which we must accord to the deportation hearing, or disregard the IJ's explicit representation, we must assume that the IJ accurately represented the situation. Aguirre-Tello's denial, some seven years later, that he was given a list is unpersuasive.

We note that a finding of fact is clearly erroneous "if it is without factual support in the record, or, where 'there is evidence to support it, [if] the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.'" Grimsley v. MacKay, 93 F.3d 676, 679 (10th Cir. 1996) (quoting Hildebrand v. Comm'r of Internal Revenue, 28 F.3d 1024, 1026 (10th Cir. 1994) (further quotation and citation omitted). After reviewing the entire record, we are left with a definite and firm conviction that a mistake was committed when the district court found that Aguirre-Tello was not given a list of free legal services.

Moreover, were we to affirm the district court's finding that Aguirre-Tello did not receive a list of free legal services, we would conclude that no unfairness ensued. Significantly, Aguirre-Tello does not contest the fact that the IJ made the announcement that all the potential deportees had received a list of free legal services. In the absence of any dispute that the IJ made that announcement and, furthermore, absent any affirmative showing that Aguirre-Tello did not hear or understand that announcement, Aguirre-Tello has failed to make a showing of unfairness, either on this issue alone or in combination with the other issues discussed herein.

-16-

**B.**

The second purported deficiency—that the IJ failed to inform Aguirre-Tello that his bond had been set at $20,000—while supported by the record, does not render the entire proceeding fundamentally unfair in violation of Aguirre-Tello's due process rights. Only a few courts have explicitly addressed this issue. See, e.g., United States v. Palacios-Martinez, 845 F.2d 89, 92 (5th Cir. 1988) (finding no fundamental unfairness where deportees were not "expressly told of the possibility of being free on bond pending appeal."); United States v. Zaleta-Sosa, 854 F.2d 48, 51 (5th Cir. 1988) (noting Palacios-Martinez). We agree that such a failure standing alone does not render the deportation proceeding fundamentally unfair in violation of due process. Moreover, as we discuss, infra, we conclude that, on the particular facts of this case, Aguirre-Tello suffered no prejudice from the failure to tell him about the bond, because the evidence is overwhelming that the availability of the bond would not have affected his strongly held desire to forego any opportunities to seek relief from deportation and return to Mexico.

**III. Prejudice**

Furthermore, to enable us to reach the ultimate conclusion that the deportation proceeding was fundamentally unfair, Aguirre-Tello would still have

to demonstrate that any errors that occurred prejudiced him. We hold he has failed to demonstrate prejudice.

## A.

While we have noted the requirement to establish prejudice, this circuit has not yet established a standard for it. In one case, we stated that the defendant had failed to show that, if he had been informed of his right to appeal, "the outcome of his case would have been different." Meraz-Valeta, 26 F.3d at 998. To the extent Meraz-Valeta in fact adopted that high standard,[7] we now overrule it.

We note that the majority of other circuits addressing this issue have not required an alien to show that the outcome of the proceeding "would" have been different in order to demonstrate prejudice. Rather, these circuits have adopted a lower standard, requiring only that the alien demonstrate a "reasonable likelihood that, but for the errors complained of, he would not have been deported." United States v. Calderon-Pena, 339 F.3d 320, 324 (5th Cir. 2003); see also United States

---

[7]Meraz-Valeta cited United States v. Holland, 876 F.2d 1533, 1537 (11th Cir. 1989) for its "would have been different" language. While Holland does use that language at one point, it also refers to the "possibility of prejudice" and considers whether the alleged deficiency in the proceeding "could have made a difference." Id. Moreover, in its specific discussion of the showing required to establish prejudice, the court stated, "[t]he prejudice need not rise to the level of showing that the defendant would not have been deported, but rather that the errors might have affected the outcome of the hearing." Id. at 1536. Thus, it is not at all clear that Meraz-Valeta intended to establish a prejudice standard requiring a showing that the outcome of the proceeding would have been different but for the alleged error.

v. Wilson, 316 F.3d 506, 511 (4th Cir.) ("In order to demonstrate prejudice, a defendant must show 'a reasonable likelihood that but for the errors complained of, the defendant would not have been deported.'" (quoting United States v. Encarnacion-Galvez, 964 F.2d 402, 407 (5th Cir. 1992))), cert. denied, 123 S. Ct. 1959 (2003); United States v. Loaisiga, 104 F.3d 484, 487 (1st Cir. 1997) ("[F]or a collateral attack on a now-final deportation order, the defendant must show prejudice in the sense of a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred." (emphasis omitted)); United States v. Perez-Ponce, 62 F.3d 1120, 1122 (8th Cir. 1995) ("[A] showing of prejudice means 'there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported.'" (quoting Encarnacion-Galvez, 964 F.2d at 407)); United States v. Fellows, 50 Fed. Appx. 82, 2002 WL 31419235, at *3 (3d Cir. Oct. 29, 2002) (same).

The Second Circuit has stated that the prejudice requirement was satisfied in a case where the alien showed "he was eligible for § 212(c) relief and could have made a strong showing in support of such relief," Perez, 330 F.3d at 104, but it has "'decline[d] to state the quantum of proof necessary for an alien to succeed in his demonstration of prejudice'" and has "suggested that a showing that there was a reasonable likelihood that an alien would not have been deported or a plausible showing of such might be sufficient." Id. at 104 n.6 (quoting United

States v. Fernandez-Antonia, 278 F.3d 150, 159-60 (2d Cir. 2002)). The Seventh Circuit has stated that an alien can show prejudice from the failure to inform him of certain rights "because an informed exercise of those rights would have yielded him relief from deportation." United States v. Espinoza-Farlo, 34 F.3d 469, 461 (7th Cir. 1994). The Ninth Circuit has adopted a less strict standard, stating that to demonstrate prejudice, an alien "must demonstrate plausible grounds for relief from deportation." United States v. Garcia-Martinez, 228 F.3d 956, 963 (9th Cir. 2000); see also Reyes-Melendez v. INS, 342 F.3d 1001, 1007 (9th Cir. 2003) ("To demonstrate prejudice, an alien need demonstrate only that the IJ's conduct 'potentially . . . affect[ed] the outcome of the proceedings.'" (quoting Campos-Sanchez v. INS, 164 F.3d 448, 450 (9th Cir. 1999))).

We agree with those circuits which have adopted a "reasonable likelihood" standard. To require an alien to show something more—i.e., that he "would" have obtained relief or the outcome of the proceeding "would" have been different—sets the bar too high in a case such as this, in which the alien seeks discretionary relief. On the other hand, to require that the alien show only "plausible grounds for relief" sets the bar too low and permits the alien to establish prejudice where there is only a slight possibility that the error had any effect on the deportation proceeding. In sum, the standard to apply in a case like Aguirre-Tello's is whether there is a reasonable likelihood that Aguirre-Tello

-20-

would have obtained relief from deportation had the IJ advised him more specifically about the availability of a § 212(c) waiver from deportation, and informed him of his bond status.

**B.**

Applying that standard to the facts of this case, we hold that Aguirre-Tello has failed to demonstrate prejudice. First, the record makes it abundantly clear that, had Aguirre-Tello been more precisely informed that he would be eligible to seek a waiver from deportation the day following the deportation proceeding, and that his bond had been set at $20,000, he would not have chosen to postpone the proceeding and apply for the waiver. He repeatedly informed the IJ, in response to direct questioning, that he wanted to return to Mexico and that he did not wish to attempt to avoid deportation. There is no reasonable likelihood that Aguirre-Tello would have sought a waiver, had the IJ explained its availability to him differently and informed him of his bond.

Assuming Aguirre-Tello did apply for a waiver, there is no reasonable likelihood that he would have received one. Aguirre-Tello would have had modest favorable circumstances surrounding his application (that his parents were legal permanent residents, that he had lived in the United States since he was four although he had *legally* lived in this country only since age seventeen or eighteen, and that he had no other criminal record). But the Attorney General would have

-21-

weighed against those circumstances the fact that Aguirre-Tello had been convicted of a serious violent crime (attempted murder). There is no reasonable likelihood that, in deciding who is deserving of discretionary relief from deportation from among the many aliens eligible for such relief, the Attorney General would grant that relief to one so recently convicted of such a serious violent crime.[8]

In support of its conclusion that Aguirre-Tello established prejudice, the district court relied upon a chart published by the Executive Office of

---

[8]The Eleventh Circuit has described the inherent difficulty in demonstrating prejudice from the denial of eligibility for discretionary relief:

> An alien's actual chances of receiving such discretionary relief [suspension of deportation] are too speculative, and too far beyond the capability of judicial review, to conclude that the alien has actually suffered prejudice from being ineligible for suspension of deportation. . . . Just as a court cannot review the inherently "subjective" judgments made by the executive in deciding whether to commute a life sentence, this Court cannot predict the subjective and fact-intensive judgments that the Attorney General would make in deciding whether to grant extraordinary relief, such as the suspension of deportation. . . . The alien cannot demonstrate prejudice, much less substantial prejudice, arising from the ineligibility for such an "act of grace" because no standards exist for a court to determine whether the executive would have granted the extraordinary relief anyway.

Mejia Rodriguez v. Reno, 178 F.3d 1139, 1148 (11th Cir. 1999) (citation omitted); see also Wilson, 316 F.3d at 511 (upholding district court's finding that "a fifty-fifty chance [of obtaining discretionary § 1182(c) relief] was not sufficient to establish prejudice").

-22-

Immigration Review which showed that, between 1989 and 1995, some 51.5% of all applications for a § 212(c) waiver were granted. What the chart does not show, however, is what proportion of those successful waiver applicants were convicted of serious violent felonies comparable to Aguirre-Tello's conviction for attempted murder. Without any indication that any of those successful applicants were similarly situated to Aguirre-Tello, the conclusion that he had at least a 50% chance of receiving a discretionary waiver is pure speculation, if not actually misleading. Additionally, the argument improperly presumes a legal obligation on the part of the IJ to have advised Aguirre-Tello not only of the differences between a pardon and a waiver, but of a hypothetical difference in the chances of success for each one.

## C.

In sum, assuming all three alleged deficiencies in the deportation hearing are established, whether they are viewed as constitutional or non-constitutional violations, and whether they are viewed individually or cumulatively, we hold that they did not render Aguirre-Tello's deportation proceeding fundamentally unfair.[9]

---

[9]The prior discussion subsumes within it and essentially resolves Aguirre-Tello's obligation to demonstrate that any fundamental unfairness in his deportation proceeding deprived him of his right to judicial review. See Meraz-Valeta, 26 F.3d at 998 (stating that the defendant must show "that the deportation hearing was fundamentally unfair and deprived the alien of the right to judicial review"); see also Mendoza-Lopez, 481 U.S. at 839. We have determined that

(continued...)

**CONCLUSION**

For the foregoing reasons, the panel opinion in this case is VACATED, and the district court order dismissing the indictment against Aguirre-Tello is REVERSED. We REMAND this matter to the district court for further proceedings consistent herewith.

---

[9](...continued)
Aguirre-Tello's deportation proceeding was not fundamentally unfair. It did not deprive him of his right to judicial review. The record shows that Aguirre-Tello was informed of his right to appeal, and he knowingly and voluntarily waived that right.

No. 02-2049, *United States v. Aguirre-Tello*
**LUCERO**, Circuit Judge, with whom **HENRY**, Circuit Judge, joins, concurring:

I join Part III and concur in the result of the majority opinion. Because Aguirre-Tello had been convicted of the crime of attempted murder, there is less than a minuscule likelihood that he would have been granted a § 212(c) discretionary waiver. Thus, he ultimately fails to establish the necessary prong of prejudice. Absent prejudice, there can be no relief, and therefore the result reached by the majority opinion reversing the district court is correct. I consider it unnecessary to reach the remaining issues.

02-2049, *United States v. Aguirre-Tello*
**HARTZ**, Circuit Judge, concurring:

I join the majority opinion except Part 1(A) of the Discussion and the first

two paragraphs of footnote 6.

No. 02-2049, *United States v. Aguirre-Tello*
**HOLLOWAY**, Circuit Judge, with whom **SEYMOUR**, Circuit Judge, joins, dissenting:

I respectfully dissent. I would not reverse either of the two major holdings of the panel opinion, as the *en banc* majority does in this opinion.

## I

### *The en banc majority has redefined the issue*

The *en banc* majority opinion unnecessarily decides an important issue of constitutional law. The *en banc* majority opinion, as I read it, does not dispute (although it also does not acknowledge) the legal fact that under administrative regulations and our precedents, the Immigration Judge (IJ) presiding over the deportation proceedings had a duty to inform Mr. Aguirre-Tello of the discretionary relief from deportation available to him.[1] The *en banc* majority, however, holds that the failure to perform this duty is not so grave a defect as to render the proceedings "fundamentally unfair" and a violation of the constitutional guarantee of due process.

---

[1]*See United States v. Mendoza-Lopez*, 7 F.3d 1483, 1485 (10th Cir. 1993), *impliedly overruled on other grounds by United States v. Fagan*, 162 F.3d 1280 (10th Cir. 1998); *see also Moran-Enriquez v. INS*, 884 F.2d 420, 422 (9th Cir. 1989); 8 C.F.R. § 242.17(a) (1994) ("The immigration judge *shall inform* the respondent of his or her apparent eligibility to apply for any of the benefits enumerated in this paragraph and shall afford the respondent an opportunity to make application therefor during the hearing.") (emphasis added).

For at least three reasons, I believe that the *en banc* majority errs in its definition of the issue. First, the issue as framed by the *en banc* majority was not timely raised in this appeal, as noted in the panel opinion, 324 F.3d 1181, 1190 n.8. Second, the issue that the *en banc* majority chooses to address is not the basis of the district court's order under review, nor is it the issue decided by the panel opinion. Third, decision of this issue is not necessary even under the *en banc* majority's analysis, because the *en banc* majority also decides that the IJ adequately advised Mr. Aguirre Tello of the relief available to him. Although I completely disagree with the latter proposition, as I discuss below, the *en banc* majority's adoption of this view makes its analysis of the constitutional issue *obiter dictum*.

The second reason cited above requires some explanation. The district court found that the advice given by the IJ was *misleading*, [2] not merely insufficiently detailed. The panel majority agreed with that determination. Moreover, both the district judge and the panel majority found that the underlying deportation proceedings were fundamentally unfair, based on the misleading nature of the IJ's comments *combined with* two other defects in the deportation

_____

[2]The trial judge's Memorandum Opinion and Order found that the words chosen by the Immigration Judge to explain the discretionary relief which Aguirre-Tello might be given were misleading. "[I]t is particularly troubling when the chosen words are even more misleading and confusing than the technical terms themselves." 181 F. Supp.2d 1298, 1303 (2002).

proceeding– the failure to advise Mr. Aguirre-Tello that bond had been set in his case (he was not even told, as the individuals, whose colloquies with the IJ he had just observed, had been told, that bond was *available* in deportation cases), and the failure to provide him with a list of free legal services that were available to him.  I will discuss these two aspects of the case more below, but just now the point is that the panel majority held this:  "We conclude that *the combination of these deficiencies* did result in fundamental unfairness."  324 F.3d 1181, 1192 (emphasis added).

## II

*The correct question is whether the combination of deficiencies resulted in fundamental unfairness.*

The panel majority held that the underlying deportation proceedings were fundamentally unfair, and so a denial of due process, because of the *combination* of three factors: the misleading advice from the IJ regarding the type of relief that was available  (discretionary relief from deportation instead of the rare grant of a pardon), the failure to advise that bond had been set, and the failure to provide information regarding the free legal services that were available.  I must respectfully disagree with the *en banc* majority's analysis of each of these factors.

**A**

*The IJ's misleading advice*

The relief for which defendant was eligible in 1994 was a waiver of deportation by the Attorney General under section 212(c) of the Immigration and Naturalization Act of 1952 as amended in 1990, which has since been repealed but was then codified at 8 U.S.C. § 1326(c). A full explanation of the source of this potential relief was given in *I.N.S. v. St. Cyr*, 121 S.Ct. 2271, 2275-78 (2001), and need not be repeated here. It is sufficient to note that it was well established in 1994, and it is not contested here, that the Attorney General was authorized to waive deportation of a permanent resident alien who had lawfully resided in this country for seven years and had not served more than five years of imprisonment on a conviction for an aggravated felony. *See id.*

The primary problem in the underlying deportation proceeding, the panel majority concluded, was that the IJ *affirmatively misled Aguirre-Tello* by saying that in one more day he would be eligible for "a pardon." As the district judge observed, the common meaning of pardon is a *rare* act of executive clemency. By contrast, during the relevant years including 1994, the year of defendant's deportation proceeding, the section 212(c) waivers were granted to a substantial percentage, just over one-half, of those who applied for them. *St. Cyr*, 121 S.Ct. at 2277 & n.5. Thus, rather than merely hope for a "rare" act of forgiveness from

the President, Mr. Aguirre-Tello had an opportunity to avoid deportation through a mechanism that was frequently employed for that purpose. His chances for obtaining a waiver were far greater than the likelihood that he could obtain a pardon. The *finding* that the advice given was confusing is unassailable.

Ignoring the fact that the district court and the panel majority both had held that the primary defect in the deportation proceeding was the misleading nature of the statements of the IJ, the *en banc* majority today adopts the government's untimely raised argument that the issue is whether there is a constitutional right to be advised that discretionary relief may be available. In contrast, I continue to believe that affirmatively misleading statements regarding the relief available resulted in fundamental unfairness.

The *en banc* majority rejects the district judge's *finding* that Mr. Aguirre-Tello was confused by the IJ's advice. Maj. op. at 14. This is a remarkable holding for at least two reasons. First, the *en banc* majority offers no reason for its rejection of the district court's view of the evidence that Aguirre-Tello *was* confused. Second, as noted in the panel opinion, the record shows clearly that *both the district judge and the prosecutor were confused by the IJ's advice* after listening to the audio tape of the deportation proceeding. Aplt. App. at 150. Mr. Aguirre-Tello, however, is perceived by the *en banc* majority to have greater

knowledge and understanding of the byzantine regulatory framework than those two professionals for reasons which are unexplained.

## B

### *The other defects in the deportation hearing*

Mr. Aguirre-Tello may have been led to believe that bond was not available for him because bond was not mentioned in his colloquy with the IJ, in contrast to the specific advice that had been given by the IJ just moments before to another individual. 181 F.Supp. 2d at 1304. In any event, it is undisputed that he was not told of the availability of bond in general, much less of the fact that bond had already been set in his case at $20,000.

The most egregious error in the *en banc* majority opinion, however, is its treatment of the district judge's finding that Mr. Aguirre-Tello was not provided a list of free legal services that were available to him. The *en banc* majority's rejection of this finding as clearly erroneous is untenable and clearly prohibited under the emphatic opinion of Justice White in *Anderson v. City of Bessemer City,* 470 U.S. 564 (1985). He there stated:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the Court of Appeals may not reverse it even though convinced that had it been sitting as a trier of fact, it would have weighed the evidence differently. *Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.*

*Id.* at 573-74, (emphasis added). *See also United States v. De La Cruz-Tapia*, 162 F.3d 1275, 1277 (10th Cir. 1998); *United States v. Toro-Palaez,* 107 F.3d 819, 824-25 (10th Cir. 1997). Here the defendant took the stand and testified that the list of available free legal services had not been provided to him, and the trial judge, who was presiding over that proceeding believed him. That finding simply cannot be clearly erroneous. The *en banc* majority's feeble characterization of the defendant's testimony as "unpersuasive" is itself the epitome of a proposition that is unpersuasive, and this is because appellate judges have no business deciding whether testimony is persuasive or not. That task is assigned to the trier of fact.

**III**

*Fundamental unfairness and prejudice*

I adhere to the conclusion of the panel majority that the effect of the combined defects in the deportation hearing constituted a denial of due process. My reasoning is set out in the panel opinion and I see no need to elaborate further on the conclusion, which I believe is strongly supported by the factors I have set out here. Similarly, little would be gained by reiterating the panel majority's analysis of the prejudice issue. I do feel compelled to comment further on the prejudice analysis of the *en banc* majority, however.

First, I note that the *en banc* majority today completely ignores the authoritative guidance of the agency in charge, the Board of Immigration Appeals,

-7-

which was set out in the panel majority's opinion, 324 F.3d at 1194 (quoting *In re Edwards*, 20 I. & N. Dec. 191, 195-96, 1990 WL 385757 (1990)).  Second, I must strongly disagree with the *en banc* majority's reliance on an extremely unrealistic, and I think unfair, view that Mr. Aguirre-Tello's expressed desire to return to Mexico can be regarded as an absolute, unaffected by his perception of the bleak prospects for deliverance from his situation.

Mr. Aguirre-Tello, as seen by the *en banc* majority, is a most remarkable individual.  Most of us are affected by circumstances in making our major decisions.  Whether we are willing to invest our time and energies in a particular endeavor is usually influenced by our reckoning of the likelihood that we might succeed.  Not so Mr. Aguirre-Tello says the *en banc* majority.  In spite of the fact that he had not been in Mexico since he was four years old, in spite of the fact that our nation acts as a magnet drawing immigrants, legal and illegal, from that nation in astounding numbers, Mr. Aguirre-Tello was "adamant" about his desire to be expelled to Mexico.  His adamant, unbending desire to be deported to a land he had not seen since early childhood was, to the *en banc* majority, apparently uninfluenced by his external realties.  Thus, the *en banc* majority disregards the district court's implicit finding that Mr. Aguirre-Tello would have chosen to apply for an administrative waiver, had he realized that his chances for success on a waiver application were far greater than his chances for a presidential pardon.

None of this is convincing. Mr. Aguirre-Tello was misled by the IJ's repeated reference to his eligibility for a "pardon." He was also unfairly disadvantaged by the other procedural defects. The cumulative effect of this combination of defects was a denial of his due process rights. The trial judge's holding here obviously rested on an implicit finding that Mr. Aguirre-Tello would have sought the administrative waiver, had he understood his prospects. That implicit finding is clearly supported here.

Finally, since the *en banc* majority concludes here, wrongly in my opinion, that Mr. Aguirre-Tello failed to show that he had been prejudiced by the cumulative effect of the errors, the expansive additional views are mere dicta.

Accordingly I must respectfully dissent.