**F I L E D**

**UNITED STATES COURT OF APPEALS**

**June 20, 2007**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ODILON MENDOZA-VELASCO,

Defendant-Appellant.

No. 06-4096
(D.C. No. 2:05-CR-296-DKW)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **McKAY**, and **HOLMES**, Circuit Judges.

Defendant Odilon Mendoza-Velasco was charged with illegal reentry by a deported alien in violation of 8 U.S.C. § 1326(a). Defendant moved to dismiss the indictment on the ground that his prior deportation proceeding violated his Fifth Amendment due process rights. When that motion was denied, Defendant conditionally pleaded guilty and was sentenced to forty-six months' imprisonment with a twenty-four month period of supervised release. Defendant now appeals the denial of his motion and the reasonableness of his sentence.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BACKGROUND

In May 2000, Defendant was arrested in Southern Arizona for transporting eight illegal aliens.[1]  According to Defendant, he intended only to provide transportation to two female aliens who had sustained minor injuries during their border crossing, but the other six aliens piled into his car and refused to exit.  He was defended by counsel who, although noting Defendant's case was a "close" one, advised Defendant to plead guilty in exchange for a sentence of time served.  Defendant, then a legal permanent resident intent on remaining in the United States, asserts that he only pleaded guilty because his attorney advised him that Section 212(c) of the Immigration and Nationality Act would likely prevent his deportation.  That provision, however, had been repealed in 1996.

At the subsequent deportation hearing, Defendant elected to proceed without counsel despite the immigration judge's offers to delay the proceedings in order for Defendant to obtain retained or pro bono counsel.  The IJ then questioned Defendant about his § 1324(a)(1)(A)(ii) conviction.  Defendant acknowledged the conviction but disagreed that his circumstances made it a deportable offense.  According to Defendant, because he only transported the

---

[1] According to 8 U.S.C. § 1324(a)(1)(A)(ii), it is a crime for any person who, "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law."

aliens for "humanitarian reasons" rather than for money, he should not have faced the possibility of deportation. (Doc. 10 at 9.) The IJ informed Defendant: "The law changed many years ago" and "no longer requires the federal Government . . . to prove that you transported anybody for monetary reasons. . . . Even if you transported them for humanitarian reasons, it is still a violation of federal law." (*Id.*)

Nevertheless, because of Defendant's protestation, the IJ requested, and the government produced, Defendant's conviction record. The IJ then explained the nature of Defendant's conviction as well as the implications of conviction on Defendant's deportability. Defendant stated that he understood and conceded his conviction.

After determining that no other exceptions applied, the IJ offered Defendant the chance to address the court before it handed down a final decision. Defendant was cut off, however, when he began to speak on his life in the United States. When the IJ informed Defendant that the court was restricted by law from considering the effects of deportation on his family and that no other exceptions applied to Defendant, the following colloquy occurred:

A.    So, there is no law or code that would allow me cancellation of deportation?

Q.    You are not eligible for cancellation of removal because of your conviction. Because it is an aggravated felony, you don't qualify for cancellation of removal as a statutory bar or [probation] for cancellation.

A.     So there's nothing I can do?

Q.     Unless you can get a pardon from the President of the United States, there is nothing you can do.  At least not within my power to grant you.

(*Id.* at 14-15.)

Defendant was deported, but later illegally reentered the U.S.  Thereafter, he was arrested and charged with illegal reentry.  After denying Defendant's motion to dismiss the indictment, the district court accepted Defendant's conditional plea and sentenced him.  At sentencing, Defendant  objected to the pre-sentence report's recommendation of a 16-point enhancement for Defendant's illegal transportation conviction.  Defendant argued that the facts underlying his conviction did not warrant such harsh treatment.  That objection was overruled, and Defendant was sentenced to forty-six months' imprisonment, the low end of the recommended Sentencing Guidelines' range.  This appeal followed.

**ANALYSIS**

**A.     Due Process**

Defendant argues that his Fifth Amendment procedural due process rights were violated because the IJ's "presidential pardon" comment amounted to an "affirmatively misleading statement about the relief available," thereby rendering his deportation proceeding fundamentally unfair.  (Def.'s Opening Br. at 14.)  Specifically, Defendant asserts that the IJ's "incorrect legal advice" precluded

-4-

him from challenging his § 1324 conviction via a § 2255 habeas petition. (*Id.* at 12.)

"When a previous deportation proceeding is attacked on constitutional grounds, we are presented with a mixed question of law and fact, which we review de novo." *United States v. Aguirre-Tello*, 353 F.3d 1199, 1204 (10th Cir. 2004) (en banc). Defendant bears the burden of proving that the underlying deportation hearing was fundamentally unfair, which requires showing that he was prejudiced. *Id.* Deportation proceedings are afforded a "presumption of regularity." *Id.*

As we have previously noted, it is an "undisputed proposition that a potential deportee is entitled in his deportation proceeding to procedural due process under the Fifth Amendment, designed to ensure that the proceeding is fundamentally fair." *Id.* We do not believe, however, that the IJ's comment violated Defendant's procedural due process rights.

The comment was made *after* an extensive discussion regarding the nature of Defendant's conviction, which ended when Defendant conceded the conviction. At that point, the discussion turned to Defendant's deportation. The comment was made in the context of exceptions to deportation, and pertained specifically to the "possibility of cancellation."[2] The potential availability of habeas relief from

---

[2] Defendant initially argues that the use of an interpreter at the deportation
(continued...)

the underlying conviction was not applicable in this context, and we see no reason why the IJ should have interpreted the question in that manner. As the district court recognized, where the IJ had been given no "suggestion, indication, or slightest hint that there might be some legitimate basis for challenging the underlying conviction," the IJ could not reasonably be expected to intuit a right to habeas relief, particularly after the conversation had "shifted from the circumstances *surrounding* [the] underlying conviction to the *consequences* of the criminal conviction." (Doc. 14 at 10-11 (Mem. Decision & Order Den. Def.'s Mot. to Dismiss at 10-11).) Nor does Defendant's follow-up question, "So there's nothing I can do," alter the context. That question relates directly to his cancellation-specific question, not to a broader context.

## B. Sentencing

Defendant contends that his forty-six month sentence is unreasonable given his lack-of-profit motive in the underlying alien transportation offense. He argues

---

[2](...continued)
hearing prejudiced his ability to fully comprehend the colloquy, an argument that Defendant failed to raise in his motion to dismiss the indictment. *See Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992) (refusing to take up issue raised for first time on appeal). Recognizing this problem, Defendant switches tack and argues not that Defendant "did not understand what was going on but that the court should not expect a pro se immigrant to litigate his case with the same vigor as a law-trained attorney." (Def.'s Reply Br. at 5.) As a result, "[a]ny contextual ambiguity should be resolved in favor of this uncounseled alien." (*Id.*) The record contains no evidence reflecting Defendant's confusion. To the contrary, Defendant more than adequately represented his position to the IJ. Moreover, as explained herein, we find no "contextual ambiguity."

that the district court erred by not varying downward because it failed to examine the § 3553(a) factors. Sentencing decisions are reviewed de novo, and sentences within the Guidelines' range are entitled to a presumption of reasonableness. *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006).

According to Defendant, the district court's error is evident from its statement that, despite the "humanitarian" justification for his crime, sentencing Defendant below the recommended Guidelines' range would require it to "ignore" or "set aside" the underlying conviction. (Sent'g Tr. at 14.) As above, context is key: Defendant's argument ignores the context in which the district court made those statements.

After hearing from both parties' counsel on the variance issue, the district court commended defense counsel but decided to adhere to the recommendation of the pre-sentence report pending any statement by Defendant. Defendant then stated:

> I know that I committed a crime in 2000. I will take it as a crime. I was attempting to help my people. In the situation that I saw them in, anyone would have done it. The situation that they were in was really sad and because of the women, I felt my heart broken. And the other situation is, the men jumped into my van, and I couldn't just get them out. I told them I was going to have problems, but I couldn't do anything else.

(*Id.*) The district court stated that Defendant's argument would require it to "ignore" and "set aside" an otherwise valid conviction not because it misapplied § 3553, but because it interpreted Defendant's arguments as contesting the elements

of the § 1324(a)(1)(A)(ii) conviction. The district court stated, "What he's arguing to me is the fact that [the other six alien males] forced their way into the vehicle." (*Id.* at 15.) This confusion was then corrected by defense counsel, who noted that Defendant was not contesting the validity of the conviction.

It is clear that the district court did consider the § 3553(a) factors. The district court noted that, even after reading the parties' briefs concerning Defendant's motion for downward departure, it did not see a "basis" under § 3553 to vary from the Guidelines' range. (*Id.* at 4.) As Defendant's own brief points out, neither § 1324(a)(1)(A)(ii) nor U.S.S.G. § 2L1.2(b)(1)(A)(vii) reflect any profit-motive requirement. That limitation was eliminated from the applicable Sentencing Guidelines' provision in 2003. While Defendant argues that his "humanitarian intent" nonetheless warrants variance from the Guidelines' range, we note that Defendant did not transport just the two injured illegal aliens, but also six, uninjured, illegal aliens. The district court stated that with such a "serious" crime "[t]here is no question about knowing the gravity of [it] when it happens. You don't just think: I've got a nice hitchhiker that needs a ride for a couple of miles." (*Id.* at 13.) In addition, the pre-sentence report listed Defendant's four DUI convictions, drug-related conviction, domestic assault conviction, and use of nine aliases, two different social security numbers, and three different dates of birth. Consequently, we do not believe that Defendant has rebutted the presumption of reasonableness attached to his sentence. Moreover,

even absent the presumption, we would still find Defendant's sentence reasonable.

**AFFIRMED**.

Entered for the Court


Monroe G. McKay
Circuit Judge