**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 14, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CHRISON PETER; BERLIAN
SIAGIAN; OCTAVIANI FNU;
VICTOR MULATUA,

        Petitioners,

v.

ALBERTO R. GONZALES,
Attorney General of the United States,

        Respondent.

No. 04-9607

---

CHRISON PETER; BERLIAN
SIAGIAN; VICTOR MULATUA,

        Petitioners,

v.

ALBERTO R. GONZALES,
Attorney General of the United States,

        Respondent.

No. 05-9534

---

**ORDER**
Filed September 14, 2006

---

Before **LUCERO**, **EBEL**, and **MURPHY**, Circuit Judges.

---

This matter is before the court on petitioners' petition for panel rehearing. Upon consideration of the pleading, the panel grants the petition for panel rehearing in part. A copy of an amended order and judgment is attached to this order. The petition is granted to the extent of the changes found in the new order and judgment.

Entered for the Court
ELISABETH A. SHUMAKER, Clerk


By:
  Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 13, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CHRISON PETER; BERLIAN
SIAGIAN; OCTAVIANI FNU;
VICTOR MULATUA,

        Petitioners,

v.

ALBERTO R. GONZALES,
Attorney General of the United
States,[*]

        Respondent.

No. 04-9607
(BIA Nos. A97-633-617;
A97-633-618; A97-632-415;
A97-633-619)
(Petition for Review)

CHRISON PETER; BERLIAN
SIAGIAN; VICTOR MULATUA,

        Petitioners,

v.

ALBERTO R. GONZALES,
Attorney General of the United States,

        Respondent.

No. 05-9534
(BIA Nos. A97-633-617;
A97-633-618; A97-633-619)
(Petition for Review)

---

[*]     On February 4, 2005, Alberto R. Gonzales became the United States Attorney General. In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Mr. Gonzales is substituted for John Ashcroft as the respondent in this action.

**ORDER AND JUDGMENT**[**]

Before **LUCERO**, **EBEL**, and **MURPHY**, Circuit Judges.

In these consolidated appeals, No. 04-9607 is petitioners' petition for review of the order of the Board of Immigration Appeals (BIA) summarily dismissing their appeal of the Immigration Judge's (IJ) decision that denied their requests for asylum and restriction on removal[1] under the Immigration and Nationality Act (INA) and the Convention Against Torture (CAT). No. 05-9534 is petitioners' petition for review of the BIA's decision denying their motion to reopen on the basis of ineffective assistance of counsel. We dismiss the petition in No. 04-9607 for lack of jurisdiction and deny the petition in No. 05-9534.

---

[**]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1]    The phrase "restriction on removal" was previously called "withholding of removal" before Congress amended the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.*, in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009. Although petitioners, the IJ, and the BIA all use the term "withholding of removal," we refer to the claim as seeking restriction on removal because petitioners' claims were filed after IIRIRA's effective date.

-2-

## Background

Petitioner Berlian Siagian, a native and citizen of Indonesia, entered the United States in August 1992, as a non-immigrant visitor. In January 1995, her husband, petitioner Chrison Peter, and their children, petitioners Victor Mulatua and Octaviani Fnu, also natives and citizens of Indonesia, joined her as non-immigrant visitors.

In August 2003, nearly ten years after he arrived in this country, Mr. Peter filed an application for asylum and restriction on removal with the U.S. Citizenship and Immigration Services (USCIS), which listed his wife and children as derivative beneficiaries. As grounds, he alleged persecution as a Christian in a predominantly Muslim country. The USCIS denied his application for asylum and charged petitioners with removability as aliens who remained in this country beyond the period authorized by their visas, in violation of 8 U.S.C. § 1227(a)(1)(B).

In January 2004, petitioners appeared with their first lawyer before the IJ in Denver, Colorado. They conceded removability and Mr. Peter renewed his application for asylum as grounds for relief from removal.

## The Merits Hearing

Petitioners' merits hearing took place on June 8, 2004. At the outset, their first lawyer moved for a continuance because he claimed that his office mistakenly calendared the matter as a removal hearing, not an asylum hearing. Although he realized the mistake the day before the hearing, he argued that he needed "some time to prepare the individuals to testify, to generate some supporting documents and to . . . prepare the case for presentation." R., No. 05-9534, at 315. The IJ denied the motion, stating:

> [W]e'll proceed with the case today and at the end of the hearing, if it appears that it has to be reset for more testimony or evidence, I'll consider it, and if I think the case is ready, then I'll give a decision then. And if you feel that you're not able to present the case, you can withdraw from the case if you want, although since it's an individual case, I have to have the [petitioners] speak for themselves today.

*Id*. at 315-16. The lawyer chose not to withdraw and the hearing went forward.

### The Evidence

Mr. Peter, who was then forty-seven years old, testified through an interpreter that he is a member of the Batak ethnic group in Indonesia, which is predominantly Christian. He was born into the Church of Seventh Day Adventists, and his wife and their children are also members of that church. At the time of the hearing his wife was forty-eight years old, their son was twenty-years old, and their daughter was nineteen-years old. Mr. Peter grew up in the city of Pontianak, and returned there after attending college in the city of

-4-

Bantung. According to Mr. Peter, Pontianak is approximately sixty percent Muslim and forty percent Christian, and North Sumatra, where his father resides, is approximately fifty percent Muslim and fifty percent Christian.

Because Mr. Peter attended private Christian schools in Indonesia, he did not allege any incidents of persecution at school. However, he testified that as an adult, he, his wife, and their children were pinched, shoved, and insulted while going to and from church. He also testified that he did not sing as loudly as he wanted to during church services because, if the singing got too loud, the neighboring Muslims "would call their kids to throw rocks at the church." *Id*. at 335. According to him, the members of the church wanted to move the facility, but the government would not give them a building permit.

Mr. Peter also testified about an incident that took place in October 1984, more than ten years before he left Indonesia. Although he had graduated from college with a management degree, he testified that his employment opportunities were limited because of his religious affiliation, which was noted on his identification card. As such, he was forced to take a day-job selling health-related books, and got a second job working nights as a chauffeur. One day he visited a government office on a sales call where he "met with the commander" at "the marines office" and explained the materials he was selling. *Id*. at 323. When the commander discovered some "verses from the Bible in those

books," the commander objected and caused Mr. Peter to be detained for one day, during which he was forced to stand in a corner, and was insulted and beaten. *Id.* He claimed that after the office "copied all the information about me," he was told "if you dare to tell anybody about what . . . happened, we will find you and we will kill you." *Id.* at 324.

At the conclusion of Mr. Peter's testimony, the IJ asked him: "If you were required to leave the country, do you have sufficient funds to pay the airline tickets for your family members and yourself?" *Id.* at 342. Mr. Peter responded, "I don't have enough money for that." *Id.*

## The IJ's Decision

The IJ found that Mr. Peter was not eligible for asylum because he did not file his application within one year of his arrival in the United States, and he did not show any changed or extraordinary circumstances to justify the late filing. The IJ also denied his application for restriction on removal under the INA and CAT because "he has not shown that it is more likely than not that he would suffer persecution in the future, I find he was not persecuted in the past, and the acts which he complains of were so long ago as to not be considered a threat in the future." *Id.* at 304. And because Mr. Peter testified that he did not have enough money to purchase airline tickets for his family to leave the country, the

IJ found that they were not eligible for voluntary departure and ordered them detained and removed to Indonesia.

Following the IJ's ruling, petitioners' first lawyer reserved their right to appeal and asked the IJ to consider voluntary departure: "I think if Mr. Peter's given even ten days, he would be able to raise the money for the tickets back home." *Id.* at 343. The IJ said:

> Well, I've already given my decision and [Mr. Peter] does have the option, if he is able to do that, to provide some actual evidence to the Court that he and his family are able to leave voluntarily. Since he stated he does not have sufficient funds, that's my decision until there's evidence to show the contrary.

*Id.* at 343-44. At the conclusion of the proceeding, petitioners were taken into custody where they remained for several days until they posted bonds for their release.[2]

### The Appeal and Motion to Reopen

On June 29, 2004, petitioners' first lawyer filed a notice of appeal to the BIA. As part of this filing, their lawyer checked the box indicating that he intended to file a separate written brief. The form warned that the BIA "may summarily dismiss your appeal if you do not file a brief or statement within the time set in the briefing schedule." *Id.* at 290.

---

[2] Petitioner Victor Mulatua was not taken into custody because he did not attend the merits hearing.

Petitioners claim that the notice of appeal was filed without their authorization, and that they were in the process of obtaining a different lawyer to represent them. The record demonstrates that during this time, petitioners were in the process of obtaining a different lawyer, because on July 2, 2004, a second lawyer attempted to enter his appearance and file a new notice of appeal. The BIA, however, returned these pleadings because they were incorrect.

Thereafter, the first and second lawyers jointly filed an "Agreed Motion to Substitute Counsel" with the BIA on August 9, 2004. *Id*. at 277. In the motion, the second lawyer stated that petitioners' prior counsel, who "did an excellent job," had been "representing the [petitioners] from the outset during their initial I-589 application, [i]mmigration [p]roceedings, and successful [b]ond [r]eductions during their detention after the [IJ] adversely denied their asylum applications." *Id*. Nonetheless, the second lawyer said that he had been retained by petitioners "to continue their appeal" because he "speaks their native tongue." *Id*. He also requested that he be "allowed to submit and substitute their returned appeal to the [BIA]" and that the "proceedings [be] adjourned temporarily." *Id*. at 278. The motion did not state any reasons for these requests, nor does it appear that the second notice of appeal was tendered with the motion.

On August 10, 2004, the BIA returned the motion to substitute counsel to the lawyers because it was again incorrect. On August 17, 2004, the BIA sent a

notice of the briefing schedule to petitioners' first lawyer (and only counsel of record), which set a September 7, 2004, briefing deadline. This notice also cited 8 C.F.R. § 1003.1(d)(2)(E), and cautioned that the failure to file a brief could result in summary dismissal. It also stated that any request for an extension of time to file the brief must be supported by good cause and received on or before the expiration of the initial filing date.

On August 23, 2004, the second lawyer finally filed the correct form to accomplish the substitution of counsel. However, he failed to file a brief or motion for extension of time by September 7, 2004. Instead, on September 9, 2004, he mailed a motion for extension of time to file the brief, which was received by the BIA on September 13, 2004. The motion states that he had only "recently received notice of the briefing schedule from the previous attorney of record," and cited the press of other business as the reasons for failing to meet the deadline. R. No. 05-9534 at 261. He requested more time to prepare the necessary "detailed, comprehensive brief . . . thoroughly covering the errors of fact and law by the Immigration Judge." *Id*.

In a notice dated September 15, 2004, the BIA denied the motion for extension of time as untimely. This notice again warned that the failure to file a brief could result in summary dismissal. The BIA also notified the second lawyer that a motion for consideration to file the brief out of time should

accompany the brief. But the second lawyer never filed a brief or a motion to file

the brief out of time. Instead, on the basis of a letter from Mr. Peter and his wife

that terminated his services, he filed a motion to withdraw on September 30,

2004. The BIA granted the motion to withdraw on October 6, 2004, and notified

Mr. Peter that he would be provided with a copy of the BIA's decision. Nearly a

month later, on October 22, 2004, and after receiving no word from petitioners,

the BIA issued its decision summarily dismissing petitioners' appeal pursuant to

8 C.F.R. § 1003.1(d)(2)(E) because no brief had been filed. Petitioners' third,

and current lawyer filed a petition for review of the BIA's summary dismissal in

this court on November 19, 2004, which is No. 04-9607.

In January 2005, petitioners' current lawyer also filed a motion to reopen

with the BIA on the basis of ineffective assistance of counsel. The BIA denied

the motion on April 5, 2005, and they filed a petition for review of that decision

in this court, which is No. 05-9534. The petitions were consolidated pursuant to

8 U.S.C. § 1252(b)(6).

### No. 04-9607

Petitioners claim that the BIA erred by summarily dismissing their appeal

for failure to file a brief. However, instead of focusing on the BIA's order of

summary dismissal, petitioners arguments are largely devoted to alleged errors

committed by the IJ, including his denial of the motion for a continuance and his

decision on the merits. Our review of these claims is procedurally barred. *See*

*Galvez Pineda v. Gonzales,* 427 F.3d 833, 837 (holding that we will not permit a

petitioner to circumvent proper procedural requirements of the BIA by presenting

contentions on appeal that were procedurally barred by the BIA).

As to the order of summary dismissal itself, petitioners' sole argument is

that the BIA should have considered their appeal on the grounds listed in their

notice of appeal. They cite *Nazakat v. INS*, 981 F.2d 1146 (10th Cir. 1992) for

the proposition that summary dismissal is improper unless the BIA examines the

notice of appeal. *Nazakat* is inapposite. The issue we reviewed in that case was

the sufficiency of the notice of appeal, not whether summary dismissal for failure

to file a brief was proper. *Id*. at 1148.

### No. 05-9534

Petitioners'[3] claim that the BIA erred in denying their motion to reopen

based on ineffective assistance of counsel. We disagree. "We review the BIA's

decision on a motion to reopen [only] for an abuse of discretion. The BIA abuses

its discretion when its decision provides no rational explanation, inexplicably

departs from established policies, is devoid of any reasoning, or contains only

---

[3] The BIA granted petitioner Octaviani Fnu's motion to reopen; thus, she is not a party to the petition for review designated No. 05-9534.

summary or conclusory statements." *Infanzon v. Ashcroft*, 386 F.3d 1359, 1362 (10th Cir. 2004) (citation and quotation marks omitted).

"Motions to reopen do not contest the correctness of (or simply request a reevaluation of) the prior decision but instead seek to reopen proceedings so that new evidence can be presented and so that a new decision can be entered." *Huerta v. Gonzales*, No. 04-9542, 2006 WL 925634, at *3 (10th Cir. April 11, 2006) (citation and quotation marks omitted); *see also* 8 U.S.C. § 1229a(c)(7)(B) ("The motion to reopen shall state the new facts that will be proven . . .").  One ground on which the BIA may properly deny a motion to reopen is the failure of the alien to prove prima facie eligibility for the underlying relief sought.  *INS v. Abudu*, 485 U.S. 94, 104 (1988); *Mickeviciute v. INS*, 327 F.3d 1159, 1162 (10th Cir. 2003).

However, because the BIA found that petitioners complied with the procedural requirements of *Matter of Lozada,* 19 I. & N. Dec. 637 (BIA)*,* to support their claim of ineffective assistance of counsel, we must also examine the correctness of the BIA's decision that they were not prejudiced under the Fifth Amendment's rubric of due process as applied in civil immigration proceedings. Here, the test is whether "his counsel's ineffective assistance so prejudiced him that the proceeding was fundamentally unfair." *Akinwunmi v. INS*, 194 F.3d 1340, 1341 n.2 (10th Cir. 1999) (citation omitted).

Petitioners cite *United States v. Aguirre-Tello*, 324 F.3d 1181 (10th Cir. 2003), a criminal deportation case, for the proposition that they need only "demonstrate prejudice which might have affected the outcome of the proceedings." Pet. Br., No. 05-9534, at 28. Under this standard, they assert that "it's practically impossible to suggest that the outcome might not have been different." *Id.* Indeed; and that is why we have rejected this as the standard to prove fundamental unfairness, even in criminal proceedings. What petitioners overlook is that our first opinion in *Aguirre-Tello* was vacated en banc, and that on rehearing, we held that the standard for proving fundamental unfairness in a criminal context, with its heightened constitutional protections, is whether there is a reasonable likelihood that the outcome would have been different. *United States v. Aguirre-Tello*, 353 F.3d 1199, 1209 (10th Cir. 2004); *see also Schroeck v. Gonzales*, 429 F.3d 947, 951-52 (10th Cir. 2005) (holding that because removal proceedings are civil in nature, the extensive constitutional safeguards of criminal proceedings do not apply, and the procedural due process attending such proceedings is limited to an opportunity to be heard at a meaningful time and in a meaningful manner).

Against this backdrop, we now examine petitioners' claims of prejudice. First, they argue that if the IJ had granted their first lawyer's motion for a continuance, he would have been better prepared. They also argue that if the IJ

-13-

had listened to additional testimony, this also might have affected the outcome. We disagree. Even under the more lenient standard announced in *Aguirre-Tello* for criminal deportation proceedings, petitioners cannot demonstrate a reasonable likelihood of a different outcome. Setting aside the fact that their first lawyer never made any attempt to inform the IJ concerning additional testimony that he wanted to present, the relevant point is that there are no new facts, which the BIA specifically noted in its decision denying the motion to reopen. And while their first lawyer and his witness, Mr. Peter, might have been better prepared given additional time, this argument could be made in any hearing or trial, and does not constitute a denial of due process.

Nor are we entirely convinced that Mr. Peter was as unprepared for his testimony as he now claims. Petitioners admit that they met with their first lawyer prior to the merits hearing. And Mr. Peter was apparently prepared to testify in some fashion, because he began his testimony by reading from a script. When the government objected, the IJ ruled that he was "not allowed to read the statement into the record," and that he "must testify spontaneously." R., No. 05-9534, at 318.

In any event, our review of the BIA's decision denying a motion to reopen on the basis of ineffective assistance of counsel is limited to the Fifth Amendment's guarantee of due process, which guarantees the right to be heard

-14-

at a meaningful time and in a meaningful manner. Petitioners' apparent argument that the IJ violated their due process rights by denying their motion for a continuance has been previously rejected. In *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1293 (10th Cir. 2001) we held that "[i]n order for [a] regulation to create a liberty interest, it must substantively limit the exercise of official discretion through specifically defined criteria that guide official decision making." 8 C.F.R. § 1003.29 provides that: "[t]he [IJ] may grant a motion for a continuance for good cause shown." Because the IJ may deny a continuance for any reason or no reason at all, this regulation does not create a protected liberty interest. *See Aguilera*, 241 F.3d at 1293.

We do acknowledge that petitioners' first lawyer failed to submit a report and articles concerning current country conditions. Any prejudice in this regard, however, was remedied when the BIA considered the new materials describing various types of harm that have come to Christians in Indonesia in its decision. The simple fact is that despite their protests that their first lawyer was unprepared for the merits hearing, petitioners (excluding Octaviani Fnu) have not come forward with any additional personalized facts or evidence that was not presented at the merits hearing.

Second, petitioners argue that they were prejudiced by their previous lawyers' failure to file a brief. Of note concerning this argument is the fact that

in their motion to reopen, they never described the legal arguments that their previous lawyers could have raised in a brief; instead, their argument focused on the failure of their lawyers to inform them that a brief was due. Despite the fact that petitioners never explained to the BIA the arguments that they allegedly forfeited on appeal, they argue in this court that but for the failure to file a brief, the outcome would have been different. We disagree.

The IJ and BIA both found that Mr. Peter failed to file for asylum within one year of his arrival in this country as required by 8 U.S.C. § 1158(a)(2)(B), nor were there any extraordinary circumstances to justify his eight-year filing delay. Petitioners do not argue that their failure to comply with the one-year application deadline was due to ineffective assistance of counsel, and more to the point, we lack jurisdiction to review whether or not the application was timely filed. 8 U.S.C. § 1158(a)(3); *Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1235 (10th Cir. 2003) (holding that we lack jurisdiction to consider a ruling denying an asylum application that is filed outside the statutory period).

Moreover, a restriction on removal will be granted only where the alien demonstrates a clear probability that his life or freedom would be threatened due to his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A); *Wiransane v. Ashcroft*, 366 F.3d 889, 894 (10th Cir. 2004). Here, the BIA reviewed the evidence and agreed with

the IJ that the events testified to by Mr. Peter, including his one-day detention and the incidents going to and from church, did not rise to the level of persecution as defined by the law. Again, no brief, no matter how artfully drawn, would have had a reasonable likelihood of changing the outcome.

Last, petitioners assert that they were prejudiced because their first lawyer was responsible for their arrest, detention, and failure to receive voluntary departure. The record belies this assertion. When Mr. Peter testified that he did not have sufficient funds to purchase airline tickets to Indonesia for his family, the IJ denied voluntary departure because Mr. Peter could not satisfy the conditions set forth in 8 U.S.C. § 1229c(b), which requires clear and convincing evidence that they have the means to depart this country. And although their current lawyer did attach a deed of trust for petitioners' residence as an exhibit to their motion to reopen, this is not evidence of anything other than an encumbrance on real property. Similarly, the assertion that their ability to post bonds proves that they had the resources to depart voluntarily is argument, not evidence.

Before it denied petitioners' motion to reopen, the BIA reviewed all of the evidence (including the new materials concerning country conditions) and the IJ's findings. It agreed with the IJ's conclusions that the incidents testified to by Mr. Peter did not constitute past persecution, that he failed to prove that it is more

-17-

likely than not that he would be persecuted in the future, or that he would be tortured upon his return to Indonesia. The BIA also affirmed the IJ's finding that petitioners could avoid future harm, if any, by relocating to a part of Indonesia that is predominately Christian, and it would be reasonable for them to do so. *See* 8 C.F.R. § 1208.13(b)(1)(i)(B) (the denial of an application for asylum is appropriate if the applicant could avoid future harm by relocation to another part of his country and it would be reasonable for him to do so).

Here, the BIA correctly determined that petitioners were not prejudiced by the ineffective assistance of counsel because there was not a reasonable likelihood that the outcome would have been different. Moreover, the BIA did not abuse its discretion in denying the motion to reopen, because it decided that petitioners failed to prove prima facie eligibility for relief, its decision is rational, comports with established policies, and contains ample reasoning. We also reject the argument that because petitioners are similarly situated to their daughter and sister, Octaviani Fnu, the BIA should have also granted their motion to reopen. This is a new claim raised for the first time on appeal, and the failure to exhaust their administrative remedies bars our review. *See* 8 U.S.C. § 1252(d)(1); *Galvez Pineda*, 427 F.3d at 837. Therefore we deny the petition for review in No. 05-9534 and affirm the BIA's decision denying petitioners' motion to reopen.

**Motion to Complete the Record**

-18-

We also deny petitioners' motion to complete the record. To the extent that the record in No. 04-9607 did not contain all the documents, the record in No. 05-9534 does. As for the second notice of appeal that their second lawyer attempted to file, there is no evidence that it was ever accepted for filing by the BIA; instead, it was returned to counsel.

The petition for review in No. 04-9607 is DISMISSED and the petition for review in No. 05-9534 is DENIED.

Entered for the Court


Michael R. Murphy
Circuit Judge

-19-