# MATTER OF EDWARDS

## In Deportation Proceedings

### A-18274740

### *Decided by Board May 2, 1990*

(1) A clear showing of reformation is not an absolute prerequisite to a favorable exercise of discretion in every section 212(c) application involving an alien with a criminal record; therefore, section 212(c) applications involving convicted aliens must be evaluated on a case-by-case basis, with rehabilitation a factor to be considered in the exercise of discretion. *Matter of Buscemi*, 19 I&N Dec. 628 (BIA 1988); and *Matter of Marin*, 16 I&N Dec. 581 (BIA 1978), clarified.

(2) A proper determination as to whether an alien has demonstrated unusual or outstanding equities in a section 212(c) application can only be made after a complete review of the favorable factors in his case, and, therefore, the use of the term "threshold test" is deemed to be inappropriate in this context, as it might be interpreted to imply that a full examination of an alien's equities can somehow be pretermitted. *Matter of Buscemi*, *supra*, clarified.

CHARGE:

Order: Act of 1952—Sec. 241(a)(11) [8 U.S.C. § 1251(a)(11)]—Convicted of controlled substance violation

ON BEHALF OF RESPONDENT:
Fernando Colon-Navarro, Esquire
Harvard Law Clinic
264 Third Street
Cambridge, Massachusetts 02142

ON BEHALF OF SERVICE:
Patricia B. Feeney
General Attorney

BY: Milhollan, Chairman; Dunne and Vacca, Board Members. Concurring Opinion: Morris, Board Member. Concurring in part and dissenting in part: Heilman, Board Member.

In a decision rendered on August 17, 1989, the immigration judge found the respondent deportable, based upon his admissions, on the charge set forth above, denied his application for a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1988), and ordered him deported from the United States to Barbados. The respondent, through counsel, has appealed from that decision only with respect to the denial of relief from deportation. The appeal will be dismissed.

The respondent is a 44-year-old native and citizen of Barbados, who was admitted to this country as a lawful permanent resident in 1968. The record reflects that he is married to a United States citizen and that he has four United States citizen children. It further shows that he incurred the following criminal convictions while in this country: attempted burglary (1977); third degree burglary, larceny, possession of burglary tools, and possession of stolen property (1979); attempted burglary (1981); possession of a controlled substance (1985); possession with intent to distribute a controlled substance (two counts), intentional distribution of a controlled substance (three counts), and conspiracy to distribute a controlled substance (one count) (1987).[1] In total, the respondent served some 2 1/2 years as a result of his criminal convictions, including a 1-year period stemming from his 1987 convictions, for which he was actually sentenced to concurrent terms of 3 to 5 years.[2]

At the deportation hearing, the respondent testified that he began abusing controlled substances in 1977, and he intimated that this vice formed the basis of his criminal record. He indicated that while incarcerated during the 1979 to 1981 period, he attended weekly drug rehabilitation sessions. He related that after his release from prison, he managed to remain free from drugs for 3 1/2 years, but that he eventually began to use them again due to family, financial, and legal difficulties. The respondent advised that he sold heroin during 1986 solely to support his own drug habit. He stated that he participated in weekly drug counselling sessions while in prison as a result of his 1987 convictions. He further testified that subsequent to his release from prison, he continued to attend a treatment program on a weekly basis. The respondent conceded that he used heroin in approximately August 1988, and that he tested positive for morphine in November 1988. He indicated that before he was able to begin tri-weekly counselling sessions, as suggested by his parole officer, the Immigration and Naturalization Service issued a warrant for his arrest. He advised that he planned to return to a treatment program after his release from Service detention. The respondent said that he would not abuse controlled substances again because he did not want to hurt his family. In this regard, he also cited a fear of Acquired Immune Deficiency

---

[1] We observe that the record is inconsistent with respect to the number and nature of the respondent's criminal convictions. Therefore, in a decision limited to this particular matter, we have adopted the list compiled by the respondent's own counsel in his appellate brief, as he presumably was in the best position, after a review of the proceedings below, to verify the various convictions.

[2] The record reflects that during the final 3 to 4 months of his most recent period of confinement, the respondent was released to a halfway house.

Syndrome and noted that, due to his high blood pressure, continued abuse of controlled substances would be fatal to him.

With respect to his history of employment, the respondent advised that when he first came to this country, he worked in a nursing home for 10 years until 1977. He testified that his next job was as a taxicab driver, an occupation in which he remained for less than a year following his release from prison in 1981. He noted that he subsequently worked at a die casting company for 2 1/2 years until 1985, when he was injured in a job-related accident. He related that he received workmen's compensation for approximately 1 year. The respondent said that he was unemployed during the period leading up to his 1987 convictions, that he sold drugs during this time, and that his spouse supported him. He stated that upon his release from prison to a halfway house, he worked as a kiln operator until he was laid off, i.e., from December 1987 until August 1988. He declared that he then earned money as a self-employed worker in the demolition and cleaning industry. He observed that he planned to return to this occupation upon his release from Service detention.

The respondent implored that he be allowed to remain in the United States because of his family. He insisted that he would work hard to change his ways. He related that his wife and children, as well as his mother and siblings, resided here and that he knew no one in Barbados. He asserted that it would be very difficult for him to find employment in Barbados because of his age. He recounted that he had discussed the possibility of returning to Barbados with his wife, but that his family would be unable to accompany him because his children were in school and Barbados lacked special educational facilities for his autistic son.

In addition, the respondent offered the testimony of his wife on his behalf. She stated that she worked as a part-time aide at the school of her autistic son. She advised that she would not accompany her husband to Barbados as that country lacked the special educational facilities required for her autistic son. She related that the respondent was a good father and that he had changed for the better since his release from prison. She declared that she and her children had received public assistance since 1982, although her husband also had provided some support.

Besides testimony, a number of documents were entered into evidence. These documents include the case notes of the respondent's Massachusetts parole officer, covering the period from February 8, 1988, to January 26, 1989. There also is a letter from the Massachusetts Public Welfare Department, dated March 16, 1989, which describes the assistance given to the respondent's wife and children, and which opines that if the respondent is allowed to remain in this

country, there would be numerous benefits to his family, including providing his children with two parents, and giving the family an opportunity to become independent of the public welfare system. Finally, the documentary evidence also comprises a medical report, dated January 21, 1988, confirming that the respondent's son has an autistic disorder.

In his decision, the immigration judge determined that the respondent was statutorily eligible for a section 212(c) waiver. However, he denied that relief in the exercise of discretion. He reasoned that the serious negative factor of the respondent's criminal convictions could only be overcome by a showing of unusual or outstanding equities, together with a demonstration of rehabilitation. He concluded that the respondent had failed to establish either of these requirements.

On appeal, the respondent argues that the immigration judge erred by failing to consider all of the favorable factors presented in his case. He asserts that he demonstrated unusual and outstanding equities. He further contends that the immigration judge should have allowed him to submit evidence regarding the nature and circumstances of his criminal convictions. He points out that his criminal record resulted from his need to support his drug habit rather than a desire to make profits. Moreover, he argues that the immigration judge placed undue weight on the factor of rehabilitation. He explains that, as a practical matter, the immigration judge based the denial of relief solely on the issue of whether he had been rehabilitated with respect to his controlled substance dependency. He indicates that it was improper to preclude relief on this basis because he was in Service detention and therefore was unable to enter a treatment facility, as had been previously arranged. Finally, the respondent contends that the immigration judge improperly relied on the parole officer's report.

For its part, the Service argues that the decision of the immigration judge is correct. It asserts, inter alia, that the respondent failed to make the requisite showing of unusual or outstanding equities.

Section 212(c) of the Act provides, in pertinent part, that aliens lawfully admitted for permanent residence who temporarily proceed abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of 7 consecutive years, may be admitted in the discretion of the Attorney General without regard to certain specified grounds of exclusion. In light of our decision in *Matter of Silva*, 16 I&N Dec. 26 (BIA 1976), a lawful permanent resident is prima facie eligible for relief from deportation under section 212(c), even though he has not proceeded abroad subsequent to the acts which rendered him deportable. *See Francis v. INS*, 532 F.2d 268 (2d Cir. 1976).

Section 212(c) of the Act, however, does not provide an indiscrimi-

nate waiver for all who demonstrate statutory eligibility for such relief. Instead, the Attorney General or his delegate is required to determine as a matter of discretion whether an alien merits the relief sought, and the alien bears the burden of demonstrating that his application warrants favorable consideration. *Matter of Marin,* 16 I&N Dec. 581, 582-83 (BIA 1978).

The exercise of discretion in a particular case necessarily requires consideration of all the facts and circumstances involved. There must be a balancing of the social and humane considerations presented in an alien's favor against the adverse factors evidencing his undesirability as a permanent resident. *Id.* at 584. The Board has enunciated numerous factors to be considered in determining whether or not to grant section 212(c) relief. Favorable considerations have been found to include such factors as family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred at a young age), evidence of hardship to the respondent and his family if deportation occurs, service in this country's armed forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character. *Id.* at 584-85. Among the factors deemed adverse to an alien are the nature and underlying circumstances of the exclusion or deportation ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country. *Id.* at 584. Moreover, one or more of these adverse considerations may ultimately be determinative of whether section 212(c) relief is in fact granted in an individual case. *Id.*

We also have pointed out that as the negative factors grow more serious, it becomes incumbent upon the alien to introduce additional offsetting favorable evidence, which in some cases may have to involve unusual or outstanding equities. *Id.* at 585. Such a heightened showing is required when an alien has been convicted of a serious drug offense, particularly one relating to the trafficking or sale of drugs. *Id.* at 586 n.4. The necessity of demonstrating unusual or outstanding equities is not exclusively triggered by serious crimes involving controlled substances, however. Rather, one must examine the gravity of the offense per se. *Matter of Buscemi,* 19 I&N Dec. 628, at 633 (BIA 1988); *see also Matter of Marin, supra.* In addition, such a showing may be mandated because of a single serious crime, or because of a succession of criminal acts which together establish a pattern of serious

criminal misconduct. *Matter of Buscemi, supra*, at 633-34. We observe that an alien who demonstrates unusual or outstanding equities, as required, does not compel a favorable exercise of discretion; rather, absent such equities, relief will not be granted in the exercise of discretion.[3] *Id.; see also Matter of Marin, supra.* There are cases in which the adverse considerations are so serious that a favorable exercise of discretion is not warranted even in the face of unusual or outstanding equities. Such was the situation in *Matter of Buscemi, supra.*

With respect to the issue of rehabilitation, the Board noted in *Matter of Marin, supra*, at 588, and reiterated in *Matter of Buscemi, supra*, at 633-34, that a section 212(c) waiver applicant who has a criminal record "ordinarily" will be required to make a showing of rehabilitation before relief will be granted as a matter of discretion. This language has been interpreted in some cases as though a clear showing of reformation is an absolute prerequisite to a favorable exercise of discretion in every case involving an alien with a criminal record. To the extent that this language may be read as creating an absolute prerequisite to a favorable exercise of discretion, we withdraw from it. Rather, section 212(c) applications involving convicted aliens must be evaluated on a case-by-case basis, with rehabilitation a factor to be considered in the exercise of discretion.

In regard to the matter before us, we point out that we have reviewed the record on a de novo basis. Accordingly, the respondent has not suffered any prejudice due to the immigration judge's alleged errors in failing to consider all of the favorable evidence on his behalf or by placing an undue burden upon him regarding rehabilitation. Moreover, we observe that, for purposes of expediency, we have not relied on the report of the respondent's parole officer in rendering our decision. Consequently, we make no ruling as to the proper evidential weight which should have been accorded to the document or whether, in fact, it should have been accepted into evidence in the first instance.[4]

---

[3] In *Matter of Buscemi, supra*, at 634, we stated that an alien who makes a required showing of unusual or outstanding equities merely satisfies the "threshold test for having a favorable exercise of discretion considered in his case." Upon review, we find this language to be misleading, as it might be read to imply that a full examination of an alien's equities can somehow be pretermitted. On the contrary, a proper determination as to whether an alien has demonstrated unusual or outstanding equities can only be made after a complete review of the favorable factors in his case. Accordingly, we have eliminated the offending language from our legal analysis.

[4] We note in passing, however, that because the respondent did not object to the entry of this document into evidence at the hearing below, it is not appropriate for him to object on appeal. *Cf. Matter of Samai*, 17 I&N Dec. 242 (BIA 1980) (objection raised for first time on appeal concerning improper notice of deportation hearing). Further, we

Additionally, while it is true that the immigration judge initially noted that he would not hear testimony as to the respondent's motivation for his crimes, the respondent ultimately was able to indicate for the record that he engaged in criminal conduct in order to support his drug habit. *See Matter of M-*, 3 I&N Dec. 804, 805 (BIA 1949) (matter involving the seventh proviso to section 3 of the Immigration Act of 1917) (while the Board will not go behind a record of conviction to reassess an alien's ultimate guilt or innocence, inquiry may be had into the circumstances surrounding the commission of the crime in order to determine whether a favorable exercise of discretion is warranted). Therefore, the respondent did not suffer prejudice. We also point out that, at the time the immigration judge rendered his interlocutory ruling, the respondent's counsel expressed agreement with it.

In analyzing the respondent's application for a section 212(c) waiver, we note that his statutory eligibility for that relief has not been contested. In regard to the exercise of discretion, we consider that the respondent possesses an extensive criminal record covering the period from 1977 until 1987, including convictions for burglary and attempted burglary, possession of a controlled substance, possession with intent to distribute a controlled substance, and intentional distribution of a controlled substance. The respondent's overall 10-year pattern of criminal misconduct, as well as his controlled substance distribution offenses, each independently require that he demonstrate unusual or outstanding equities if he is to have the possibility of receiving a favorable exercise of discretion.

In the respondent's favor we take into account the fact that he has resided in this country for approximately 22 years. We note that he is married to a United States citizen, that he has four United States citizen children, that his mother and siblings reside in this country, and that he apparently has no family remaining in Barbados. We observe that the respondent's wife declared that he is a good father. We acknowledge that his family will suffer emotional hardship if he is deported to Barbados. We are aware of the special hardship that the respondent's autistic child may suffer from a separation. In sum, we conclude that these equities cumulatively rise to the level of the unusual or outstanding.

In regard to other alleged favorable equities forwarded by the

---

consider that the respondent, while attacking the propriety of that document, at the same time takes the somewhat contradictory position in his Notice of Appeal (Form I-290A) that the immigration judge failed to consider favorable information contained in the document. In any event, we observe that the favorable information found in the document is simply repetitive of that which appears elsewhere in the record.

respondent, however, we note that he has neglected to submit any evidence to support his conclusory allegation that he will be unable to find work in Barbados because of his age. In terms of the financial hardship that his family may face due to his deportation, we consider that they received support from the public welfare system before the respondent encountered any difficulties with our immigration laws. He has not shown that their financial situation will be materially exacerbated if he is forced to depart from this country.

Turning to the issue of rehabilitation, we find it to be a significant factor in view of the nature and extent of the respondent's criminal history. Specifically, he has a record of offenses extending from 1977 until 1987, including convictions for controlled substance distribution. He attributed these crimes to his need to support his drug habit. While such a claim may tend to show that the respondent is not an inherently evil person, we still must consider the safety of our society. Regardless of the respondent's motivation, the community still will suffer the consequences of any future criminal behavior on his part.

At the hearing, the respondent promised that he would try to mend his ways. He renounced further controlled substance abuse because of the adverse effect on his family and because of the dangers to his own health. He participated in a number of treatment programs, including one at the time of his detention by the Service. Although the respondent appears to have been able to free himself from drugs for various periods of time, we note that he ultimately was unsuccessful in his quest. For example, we consider that while on parole and participating in a treatment program after his most recent period of incarceration, the respondent used controlled substances on at least two occasions, in August and November 1988. Consequently, on the record before us, we determine that he failed in his attempt to rehabilitate himself.

While it is unfortunate that the respondent apparently has not been able to participate in a controlled substance treatment program while in Service detention, we reject the respondent's suggestion that this fact bars a finding that he has not rehabilitated himself. *See Matter of Marin, supra,* at 588-89 (while it is more difficult for confined aliens to establish rehabilitation than those who are at liberty, this does not result in a violation of their constitutional rights). Further, we observe that the respondent was able to participate in a treatment program directly prior to his detention by the Service. However, he wasted this opportunity by continuing his use of controlled substances on at least two occasions during this period.

In balancing the various factors in the respondent's case, we take note of his favorable equities, which we found to be unusual or outstanding. However, when we weigh these equities against the

adverse factors of his extensive criminal record, which includes controlled substance distribution offenses, and our lack of confidence as to his rehabilitation, we determine that a favorable exercise of discretion is not warranted.

Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.

*CONCURRING OPINION:* James P. Morris, Board Member

I respectfully concur.

I fully concur with and join in the Board's order with respect to both its rationale and the result reached. However, I wish to elaborate on two points which apparently have caused some confusion in the application of our prior decisions.

The first point is the Board's position with respect to weighing the equities in the course of exercising its discretion regarding an applicant for relief under section 212(c) who has been convicted of a serious crime or a succession of criminal acts which together establish a pattern of serious criminal misconduct. In *Matter of Marin*, 16 I&N Dec. 581 (BIA 1978), we pointed out that such an alien may be required to show unusual or outstanding equities in order to receive favorable consideration of his application. While the intention of the Board in this holding appears to be clear enough, it nevertheless caused misperceptions in some quarters, with the assumption being made that if unusual or outstanding equities could be shown, relief under section 212(c) would follow.

In the hope of clarifying its position, the Board subsequently published its decision in *Matter of Buscemi*, 19 I&N Dec. 628 (BIA 1988). There we pointed out that the fact that an alien has demonstrated unusual or outstanding equities does not compel a favorable exercise of discretion. Rather, we held that an alien with a serious criminal record who failed to make a showing of unusual or outstanding equities had not met a threshold test to be considered for relief under section 212(c). The Board holds in the present case that consideration of an application for relief under section 212(c) may not be pretermitted, but that a complete review of favorable factors must be made before a proper determination can be made as to whether or not the alien has established unusual or outstanding equities.

Aside from the problem of pretermission of waiver requests, the use of the phrase "unusual or outstanding equities" causes some other difficulties. First, there is no need to determine whether or not the equity is unusual. It is the weight of the equity that is significant, not the frequency with which it may occur. Therefore, I would not treat the unusual nature of the equity as a significant factor. With regard to

evaluating equities as "outstanding," there has been a problem of definition. For example, 7 years as a lawful permanent resident is a statutory minimum requirement, and therefore, that period of residence logically would not be regarded as an outstanding equity, whereas 25 years of residence ordinarily would be considered to be an outstanding equity. But as time passes beyond the required 7 years, the question arises as to when the period of residence, per se, becomes an outstanding equity. We clearly should not pinpoint a specific period, e.g., 14 years, because the quality of the residence should also be considered in determining its weight. Similarly, there is no formula for determining the number and type of United States citizen and lawful permanent resident relatives who may constitute an outstanding equity. For these reasons, I would not attempt to assign a value of "outstanding" to any particular equity. I believe that the appropriate method for addressing the equities is to evaluate all of them, assigning weight or importance to each one separately and then to all of them cumulatively. They should then be balanced against the adverse factors, which should also be evaluated cumulatively. It is at this point that an alien who has been convicted of a serious crime may be granted a favorable exercise of discretion under section 212(c) because his equities are "outstanding" and are of sufficient weight to override the adverse factors present in his case. When the alien's equities are fully and properly evaluated and it has been determined that they are not of sufficient weight to overcome the adverse factors of record, there is little point in designating them as "outstanding."

The second area of confusion flowing from the Board's decisions in these cases involves the issue of rehabilitation. The Board's order points out that language used in *Matter of Marin, supra*, and *Matter of Buscemi, supra*, has been interpreted in some cases as though a clear showing of reformation is an absolute prerequisite to a favorable exercise of discretion in every case involving an alien with a criminal record. The Board then withdraws from the language in those cases to the extent that it may be read as creating an absolute prerequisite to a favorable exercise of discretion. I agree with the position the Board has taken in that regard in the present case. I would emphasize, however, that the issue is mostly one of proof. The alien may have a clear record since his conviction and may have taken positive steps to establish rehabilitation; yet, because of incarceration, the length of time since his conviction, or some other reason, he may be unable to establish convincingly that he has been rehabilitated. While such evidence would not carry the same weight as evidence demonstrating complete rehabilitation, his efforts may be considered, and he is not barred automatically from discretionary relief. On the other hand, if an alien has been convicted of a serious crime, and the evidence suggests that

200

he has not been rehabilitated, a favorable exercise of discretion would be inappropriate. For example, where the alien, since his conviction, has engaged in further criminal activity, has used or dealt in illicit drugs, or has associated with criminal elements, those circumstances would indicate that the alien is unrehabilitated and is undeserving of a favorable exercise of discretion, even though his equities may be highly favorable and he may be able to show that he has taken steps which ordinarily might lead to a finding of rehabilitation.

In sum, I believe that it is the Board's purpose to provide guidance in the exercise of discretion in these areas but that it is not the Board's intention to provide a formula that should be rigidly followed.

*CONCURRING IN PART AND DISSENTING IN PART*:
Michael J. Heilman, Board Member

I respectfully concur in part and dissent in part.

I agree with the major purpose and conclusion expressed in the majority opinion. There is one part of the opinion, however, that could easily sow more confusion and more difficulty. That is the part of the majority opinion that finds certain of the respondent's equities to "cumulatively" rise to the level of "unusual or outstanding." It may well be that any attempt to formulate a method for exercising "discretion" is doomed to be either too broad or too narrow, and that rough formulas may be all one can devise. It seems to me, however, that in *Matter of Marin*, 16 I&N Dec. 581 (BIA 1978), as well as in *Matter of Buscemi*, 19 I&N Dec. 628 (BIA 1988), it was fairly clear that the term "outstanding or unusual" equities was not itself confusing. The majority opinion does not attempt to clarify or explain that term.

Unfortunately, however, as a result of the majority opinion in this case, we may well find ourselves having to explain our use of the term in its application to the equities in this case. The majority uses that term in a manner not previously employed. It appears to find that a number of equities, some of which in themselves are in no sense "unusual or outstanding," become so by an apparent mathematical operation. The declaration of the respondent's wife that he is a "good father" is surely evidence of a laudable quality. Likewise, the possibility that the family might suffer "emotional hardship" is a factor to be taken into account. But why these "equities" become equities of the highest quality is never explained, although the clear implication of the majority's discussion is that this occurs through the process of addition. It would thus appear that the majority is presenting the option to applicants to establish the existence of "unusual or outstanding" equities by presenting a certain number of

equities of a lesser magnitude which "cumulatively" will be transformed into equities of a higher level.

On its face, this optional approach presents some rather daunting problems. Initially, it implicitly abandons the approach taken in both *Matter of Marin, supra,* and *Matter of Buscemi, supra,* which seemed to require an identification of individual "unusual or outstanding" equities, in the absence of which an applicant could not overcome highly adverse factors. This approach at least had the virtue of an "objective" standard in judging equities, which would apply equally to a drug trafficker and an armed robber. For example, in most instances, it would allow one to consider 20 years of permanent residence an "outstanding" equity.

The "cumulative" approach, however, would allow one to determine that no individual "unusual or outstanding" equities existed, and then allow one to nonetheless grant the waiver because a certain number of more mundane equities were presented. To my knowledge, neither *Matter of Marin, supra,* nor *Matter of Buscemi, supra,* has been construed to provide this option.

In my estimation, this optional approach would in fact take us back to the situation which existed prior to the publication of *Matter of Marin, supra.* I would not do that and so do not join in that portion of the majority opinion.