NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0292n.06

Case No. 14-3784

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Apr 21, 2015

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JACEK TRELA, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| ERIC H. HOLDER, JR., | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

**BEFORE:  CLAY, KETHLEDGE, and DONALD, Circuit Judges.**

   **BERNICE BOUIE DONALD, Circuit Judge**.  Petitioner Jacek Trela ("Trela") seeks

judicial review of a final removal order issued by the Board of Immigration Appeals ("BIA").

That order dismissed his appeal of an Immigration Judge's ("IJ's") denial of his application for

cancellation of removal brought pursuant to section 240A(a) of the Immigration and Nationality

Act ("INA").  8 U.S.C. § 1229b(a).  For the reasons stated herein, we **DENY** the petition and

**AFFIRM** the BIA's order.

I.

   Trela, a citizen of Poland, first entered the United States on or around April 11, 1987, and

became a lawful permanent resident on April 11, 1989.  On June 19, 1997, Trela was shot in the

arm with a shotgun, allegedly by a jealous friend.  As a result he was hospitalized for

approximately 30 days, and required extensive treatment for the wound. Trela became dependent on painkillers as a result of his medical treatment. Because he could not afford to continue prescribed medication, Trela began using heroin. He became addicted to heroin and alcohol, and tried unsuccessfully to overcome those addictions.

On April 8, 1998, Trela was convicted of a possession of less than 25 grams of heroin in violation of Michigan's Controlled Substance Act, MCL 333.7403(2)(a)(v) and MSA 14.15(7403). He served a jail sentence of approximately thirty days and was placed on three years' probation, which he served between 1998 and 2001. Trela violated his probation once. Initially, he testified he could not remember the reason, and thought it might have been for missing a hearing. Subsequently, when confronted by the IJ, he testified that the reason was his arrest for shoplifting, assault and battery. Trela testified that he pled guilty to the shoplifting, assault and battery, served 35-36 days' jail time and does not remember if he also received and served a term of probation.

Placed into removal proceedings, Trela applied for cancellation of removal under section 240(a) of the INA. In January 2011, while his application was pending, Trela was charged with driving while intoxicated ("DUI").[1] He pled not guilty and received an order of probation for a term of one year, beginning in September 2011. During probation, Trela was required to (1) attend Alcoholics Anonymous meetings twice weekly, (2) complete Alcohol Highway Safety Education, (3) abstain from using or possessing any illegal substances, (4) attend outpatient treatment if he tested positive for any drugs or alcohol, (5) submit to drug urinalysis and (6) abstain from consuming any alcohol.

---

[1]Trela alternatively stated that he may have been arrested for a DUI in March or February 2011.

Trela's merits hearing before the IJ began in March 21, 2011 and, after several continuances, culminated in the IJ's oral decision on October 25, 2012. A.R. 54-55. In the first hearing the IJ emphasized the importance of rehabilitation for discretionary relief. At the end of the hearing, the IJ continued the case "so that the [c]ourt could have a better feel for whether or not [Trela] was rehabilitated." A.R. 73; 164.

At a subsequent hearing on October 21, 2011, Trela stated that if he had "another chance," he would be substance-free, get married, have children, and be a productive person. A.R. 287-88. At the same hearing, Trela also stated that he had not used heroin since his arrest for heroin use in 1998. A.R. 250 ("Since the day you were arrested with heroin, have you used heroin at all since that day?" "No, sir. No, sir.") Trela also proffered a letter dated August 11, 2011, from his employer that stated that Trela was "a carpet installer, and a good painter." A.R. 267; 431-32. Trela testified that he could not perform his work functions after being shot in the arm, and was limited to driving his employer's van and performing paperwork. When asked by the IJ to explain the discrepancy in his employer's letter and Trela's testimony about his work, Trela said his employer had language barriers and did not intend to imply that Trela could perform the functions of carpet installer and painter currently, only that he had done so in the past.

During the October 21, 2011 hearing, the IJ stated that "in order to get cancellation of removal normally when you're a criminal, you have to demonstrate that you've been rehabilitated and you're still on probation." A.R. 277. The IJ also informed Trela that dishonest testimony would demonstrate a lack of potential for rehabilitation. A.R. 278. ("[O]ne thing that I use to measure rehabilitation is whether you've been completely honest with me.") The IJ requested Trela produce certain documentary evidence, including a dated letter from his

probation officer about the status of his compliance with the terms of his probation, and continued the hearing so Trela could comply.

When the hearing continued on January 31, 2012, Trela was unable to produce the requested documents, and stated that the probation office would not provide a letter as requested but was willing to discuss Trela's case over the telephone with the IJ. The IJ continued the hearing once more in order to speak with Trela's probation officer telephonically on March 1, 2012.

At the March 1, 2012 hearing, the IJ spoke telephonically with Trela's probation officer. Trela's probation officer stated that Trela violated his probation by testing positive for alcohol and cocaine on January 4, 2012, and for alcohol on January 30, 2012. Trela confirmed the probation officer's statements. Specifically, Trela testified that between his October 2011 hearing testimony and his March 1, 2012 hearing, he had "screwed up" and used cocaine "several times," when he was having "a tough month" in January 2012. A.R. 405; 409-10. Trela could not remember whether he may also have used cocaine in October, and subsequently stated that he also used heroin (when cocaine was not available).

As a result of violating his probation, Trela was referred to an outpatient treatment program and was scheduled for a probation violation hearing. Trela proffered evidence that he voluntarily attended two single-week terms at an inpatient treatment facility during February 2012. A.R. 399. The probation officer stated that if Trela could abstain from using drugs and alcohol, he had no objection to Trela remaining on probation to "work out his term." A.R. 396. Given Trela's probation violations, the government expressed concern regarding whether he could "show genuine rehabilitation." A.R. 399. However, the government did not object to the IJ's proposal of granting a continuance for Trela to complete his probationary term. When

presented with the possibility of a continuance, Trela testified that he had stopped using cocaine completely, and with his newfound sobriety, understood that using drugs or alcohol would undermine a showing of rehabilitation and that his removal to Poland was at stake.

The IJ then took the case under advisement, allowing Trela to proffer any documentary evidence (in particular, proof of successful completion of his probation term ending in September 2012) up to two weeks before the next hearing, scheduled for October 25, 2012, which would allow the government sufficient time to respond. The IJ waited until 5pm on October 24, 2012, and when Trela failed to submit any proof of successful completion of his probation, the IJ dictated an oral decision denying cancellation of removal. At the hearing on October 25, 2012, Trela's counsel proffered proof of Trela's successful completion of probation.[2] The government objected to the document because it was untimely. Nevertheless, the IJ received the document and dictated an addendum to his oral decision addressing the document.

The IJ's oral decision found that Trela met all the statutory prerequisites for discretionary cancellation of removal under section 240(a). The IJ noted that Trela must also establish that "he warrants such relief as a matter of discretion," utilizing the fact-sensitive standard outlined in *Matter of C-V-T-* . A.R. 48. The IJ proceeded to articulate the facts of *C-V-T-* and noted that when an applicant seeking discretionary relief was being removed because of a drug possession conviction, evidence of rehabilitation is generally required for relief, though such "rehabilitation is not an absolute prerequisite."[3] A.R. 49. The IJ concluded that Trela had "outstanding equities

---

[2]The document was a "Motion and Order for Discharge from Probation," signed by a probation officer on August 13, 2012 and countersigned by a judge on October 18, 2012. The document stated that Trela had "completed all terms and conditions of probation." A.R. 79.

[3]The IJ had referenced the applicable case law and the importance of rehabilitation for discretionary cancellation of removal previously during Trela's merits hearing. A.R. 57 ("[W]hile the [c]ourt does not require absolute[ ] rehabilitation, it is often the most important factor in the case.").

in his favor, including his disability, his work history, his family in the United States," and his "length of time in the United States." A.R. 78. However, his criminal history and continued involvement in drugs and alcohol weighed against a favorable exercise of discretion. The IJ also found that Trela's prevarication during testimony indicated a lack of potential for rehabilitation.

The IJ's addendum addressed Trela's untimely proffer of a "Motion and Order for Discharge from Probation," signed by a probation officer on August 13, 2012 and countersigned by a judge on October 18, 2012. A.R. 79. The document stated that Trela had "completed all terms and conditions of probation." *Id*. The IJ noted that as the motion was signed on August 13, 2012, and the order was signed on October 18, 2012, Trela could have submitted it before October 25, 2012. The IJ also noted that Trela failed to explain why the end of his probation varied from September 2012 to October 2012, and why there was a change in the presiding judge. The IJ held that Trela's successful completion of his probation did "not change the fact that [Trela] intentionally prevaricated to the [IJ]," in reference to his testimony about his 1998-2001 probation violation and his employment as a painter. A.R. 80. The IJ held that it also did not change the fact that (1) Trela was convicted of a DUI offense while his case was pending, and (2) continued to use cocaine and alcohol while his case was pending and while he was on probation. *Id*. Accordingly, the IJ denied Trela's application for discretionary relief on October 25, 2012.

On February 20, 2013, Trela appealed to the BIA arguing that the IJ improperly made Trela's complete rehabilitation a prerequisite to cancellation of removal. In a decision issued on July 14, 2013, the BIA disagreed with Trela and affirmed the IJ's findings. The BIA began by invoking *Matter of C-V-T-* for the proposition that it must "balance the relevant positive and negative factors presented in [Trela's] case." A.R. 3 (citing *C-V-T-*, 22 I. & N. Dec. 7 (BIA

1998)).  The BIA also stated that "[w]hile rehabilitation is not an 'absolute prerequisite to a favorable exercise of discretion,' it is a factor that should be considered."  *Id*. (citing *Matter of Edwards*, 20 I. & N. Dec. 191, 196 (BIA 1990)).  The BIA then considered the negative factors in Trela's case, including his dishonesty before the IJ, and found them to be "substantial."  A.R. 4.  The BIA stated, "[a]gainst these negative factors we must weigh [Trela's] favorable equities," which included his length of residence in the United States since 1987, his family ties in helping his uncle and mother, his reliance on drugs as a means to alleviate pain from a shooting, and his lack of family in Poland.  *Id*.  The BIA then addressed the evidence presented, stated that Trela did not meet "his burden of showing that his favorable equities outweigh[ed] the negative factors," and accordingly upheld the IJ's decision.  *Id*.

Trela now alleges that the BIA improperly applied its own standards when reviewing the IJ's decision in his case.  Pet'r Br. at 1.  More specifically, Trela argues that the BIA contravened its own precedent in *Matter of C-V-T-*, 22 I. & N. Dec. 7 (BIA 1998) by (1) failing to explicitly state that it was balancing the equities when doing so, and (2) making absolute rehabilitation a prerequisite for discretionary relief.  Pet'r Br. at 9.  We consider each argument separately.

II.

Because Trela was found removable pursuant to INA § 212(a)(2)(A)(i)(II), our jurisdiction to review the BIA's final order of removal (or in this case, its decision to deny cancellation of removal) is limited to constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(C), (D) (2012).  Trela does not challenge his removability, the underlying conviction, or our limited jurisdiction over his petition.  To the extent that Trela's claims raise a question of law or constitutional issue, we review such claims de novo.  *See Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006); *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 630 (6th Cir. 2006).

III.

The parties agree that *Matter of C-V-T-* provides the applicable standards and rules in this case. In that case, the BIA stated that favorable considerations (such as family ties and length of residence within the United States), and adverse factors (such as the existence of a criminal record, and its nature and recency), must be balanced to determine whether discretionary relief should be granted. *Matter of C-V-T-*, 22 I. & N. Dec. at 11-12 (BIA 1998).

Trela argues that "[s]imply listing the favorable and negative equities and declaring a decision is inadequate," because it merely "presents the equities" without actually "balanc[ing] them." Pet'r Br. at 9, 10 (alleging that the BIA did not balance the equities because "the precedent requires a balancing of the equities and [not] [*sic*] a simple listing leading to a conclusion.")[4] "[C]laims that require an evaluation of whether the BIA adhered to legal standards or rules of decision articulated in its published precedent can raise nondiscretionary 'questions of law' that are reviewable by the courts of appeals." *Ettienne v. Holder*, 659 F.3d 513, 517 (6th Cir. 2011).

Tellingly, Trela cites no authority in support of his argument that listing the equities does not constitute actual balancing. Perhaps this is because we have held, to the contrary, that the BIA need not list every factor, issue, or point of contention it considers in making its decision. *Scorteanu v. I.N.S.*, 339 F.3d 407, 412 (6th Cir. 2003) (finding that the BIA "has no duty to write an exegesis on every contention," provided it "consider[s] the issues raised, and announce[s] its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted."); *see also Suarez-Diaz v. Holder*, 771 F.3d 935, 945 (6th Cir. 2014). We have upheld the BIA's ability to streamline procedures by issuing brief or even summary

---

[4]We note that Trela's omission of the word "not," if deliberate, would fundamentally alter or contradict his argument that a "simple listing leading to a conclusion" is not sufficient balancing.

affirmances, provided we have sufficient basis upon which to review the BIA's (or IJ's in the case of a summary affirmance) decision. *Scorteanu*, 339 F.3d at 412.

In this case, the BIA explicitly stated that it must "balance the relevant positive and negative factors," (A.R. 3) detailed the arguments of the parties and the findings of the IJ, agreed with the conclusions of the IJ, and exercised its lawful authority to "issue a brief order affirming, modifying, or remanding the decision under review." 8 C.F.R. § 1003.1(e)(5). Upon review, the BIA's opinion and the record have provided us with sufficient basis upon which to review the BIA's decision.

Though the BIA's decision in *Matter of C-V-T-* requires a balancing of equities, it does not prescribe a specific way to do so. Nor does it assign specific weight to individual equities. On appeal, Trela lists the same favorable and negative factors contained in the BIA's decision, but comes to the opposite conclusion that the favorable equities outweighed the negative factors. Trela cannot use the rhetoric of a question of law to disguise what is essentially a disagreement with the exercise of discretion. *Liu v. I.N.S.*, 508 F.3d 716, 721 (2d Cir. 2007).

We lack jurisdiction over claims which merely disagree with the IJ's emphasis of some factors over others. *Ettienne*, 659 F.3d at 518 ("[W]e lack jurisdiction over claims that the [BIA] failed to consider or put insufficient emphasis on particular factors in the Petitioner's case."); *Adamiak v. Holder*, 482 F. App'x 59, 62-63 (6th Cir. 2012) (concluding that the Court lacks jurisdiction over an alien's argument that was "'merely an objection to the weight the BIA assigned his evidence,' which 'amounts to nothing more than a challenge to the [BIA's] discretionary . . . exercise[] cloaked as a question of law'" (quoting *Farraj v. Holder*, 316 F. App'x 398, 400 (6th Cir. 2009))). Accordingly, we find that the BIA did not contravene its own

precedent in the form of its order, and we decline to review the substance of the BIA's decision for lack of jurisdiction.

IV.

We disagree with Trela's argument that the BIA also erred by upholding the IJ's decision, which he claims made absolute rehabilitation a prerequisite for discretionary relief. The BIA's precedent provides that "a respondent who has a criminal record will ordinarily be required to present evidence of rehabilitation before relief is granted as a matter of discretion," though such a showing is "not an absolute prerequisite in every case." *Matter of C-V-T-*, 22 I. & N. Dec. 7 at 12 (BIA 1998). The IJ and BIA's decisions in this case accurately reflect this view. A.R. 3, BIA Decision, at 1 (citing *Matter of Edwards*, 20 I. & N. Dec. 191, 196 (BIA 1990) and *Matter of C-V-T-*, 22 I. & N. Dec. at 11) ("While rehabilitation is not 'an absolute prerequisite to a favorable exercise of discretion,' it is a factor that should be considered."); A.R. 49, IJ Decision, at 4 (citing *Matter of C-V-T-*, 22 I. & N. Dec. at 12) (noting that when an applicant seeking discretionary relief was being removed because of a drug possession conviction, evidence of rehabilitation is generally required for relief, though such "rehabilitation is not an absolute prerequisite.").

The second paragraph of the BIA's decision addresses the issue of complete rehabilitation and finds the IJ did not make Trela's "complete rehabilitation a prerequisite to cancellation of removal." A.R. 3. On this issue, the BIA essentially affirmed the IJ without further discussion. Accordingly, we review the IJ's decision below. *Gilaj v. Gonzales*, 408 F.3d 275, 282-83 (6th Cir. 2005) (per curiam) ("Where the BIA adopts the IJ's reasoning, the court reviews the IJ's decision directly to determine whether the decision of the BIA should be upheld on appeal.").

Although the IJ clearly considered Trela's compliance with the terms of his probation to be indicative of rehabilitation, he also stated that dishonest testimony would demonstrate a lack of potential for rehabilitation. As such, the IJ's decision was based on more than just Trela's "recidivism." Pet'r Br. at 9. Indeed, the IJ considered Trela's successful completion of his probation, and his efforts to better himself, but found those factors did "not change the fact that" Trela also intentionally prevaricated,[5] and had relapsed to using drugs and alcohol in violation of his probation even after he was placed in removal proceedings and warned by the IJ that he would be undermining his chances for discretionary relief. Perhaps the IJ should have used the word "outweigh" instead of "change," but the substitution—if erroneous—is ultimately harmless. *See* 8 CFR 1003.1(e)(4).

V.

For the foregoing reasons, we **DENY** the petition and **AFFIRM** the BIA's order.

---

[5]The BIA also noted the IJ's finding that Trela prevaricated. *See* A.R. 4.