**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3159
_____

ABDUVAKHOB ABDUKAKHAROVICH ALIMBAEV,
Petitioner

v.

ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A079-729-904)
Immigration Judge: Charles M. Honeyman
_____

Submitted Under Third Circuit LAR 34.1(a)
June 3, 2019

Before: SMITH, *Chief Judge*, JORDAN, and MATEY, *Circuit Judges.*

(Filed June 25, 2019)
_____

OPINION*
_____

_____

    * This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

Abduvakhob Alimbaev seeks review of the decision of the Board of Immigration Appeals ("BIA") denying his application for lawful permanent residency. Exercising limited review, and identifying no error of law, we will dismiss his petition.

I.

Alimbaev's case is before us for a third time with a correspondingly long history. *See Alimbaev v. Att'y Gen.*, 872 F.3d 188 (3d. Cir. 2017) ("*Alimbaev I*").[1] *Alimbaev I* outlined the facts and we incorporate that background here. *Id.* at 190–94. In that decision, we concluded that the BIA had misapplied the standard of review applicable to the Immigration Judge's ("IJ") credibility determinations. We explained that Alimbaev's credibility is important on at least two issues: first, whether he viewed terroristic videos; and second, whether he and his family are likely to face hardship if he is forced to leave the United States. So, we held, "[o]n remand, the BIA must reconsider those factors with due deference to the IJ's factfinding before weighing the various positive and negative factors to make its ultimate discretionary decision on adjustment of status." *Id.* at 201.

On remand, the BIA affirmed the IJ's grant of withholding of removal and protection under the Convention against Torture ("CAT"). This time, the BIA explained that, even crediting the IJ's findings of fact, Alimbaev still didn't carry his burden of establishing that he warranted an adjustment of status. It did give "reduced weight" to

---

[1] We remanded Alimbaev's first appeal on the Government's unopposed motion. *Alimbaev v. Attorney Gen.*, 872 F.3d 188, 193 (3d Cir. 2017). Because the Court did not issue an opinion in that appeal, we refer to our opinion in Alimbaev's later appeal as *Alimbaev I*.

any hardship from Alimbaev's possible separation from his wife because they married "more than 3 years after he was placed into removal proceedings," so "the potential for separation was known prior to the marriage." (App. 7). And the BIA discounted the hardship accompanying a return to Uzbekistan, because "the grant of withholding of removal and protection under the [CAT]" means he "is not in danger of being removed to Uzbekistan." *Id.*

In addition, while it accepted the IJ's finding that Alimbaev "lacked actual knowledge of the inaccuracies in his immigration applications," the BIA still considered "the submission of inaccurate applications to be an adverse discretionary factor." *Id.* The BIA also noted that the IJ "found that the circumstances surrounding [Alimbaev's] admission into the United States [were] a negative factor." *Id.* Balancing these equities against the possibility of family separation and the resulting emotional and financial hardships, the BIA declined to adjust Alimbaev's status. *Id.* at 8. Alimbaev again timely petitioned for review.

## II.

When the BIA issues its own opinion, we review that decision, not the IJ's. *Cadapan v. Att'y Gen.*, 749 F.3d 157, 159 (3d Cir. 2014). We review the BIA's legal determinations de novo, including whether it properly applied clear error review to the IJ's findings of fact. *Mendoza-Ordonez v. Att'y Gen.*, 869 F.3d 164, 169 (3d Cir. 2017).

## A. Jurisdiction

We have jurisdiction over final removal orders of the BIA subject to the limitations established in 8 U.S.C. § 1252(a).[2] Review of "constitutional claims or questions of law" is permitted; reexamination of the evidence is not. *Id.* § 1252(a)(2)(D); *Jarbough v. Att'y Gen.*, 483 F.3d 184, 189 (3d Cir. 2007). The Government argues that we lack jurisdiction because Alimbaev only challenges the BIA's decision on his status, and we agree. As noted in *Alimbaev I*, "we lack jurisdiction to review the BIA's discretionary decision whether to grant Alimbaev's adjustment application and the balancing of the positive and negative factors that underlie it." 872 F.3d at 200. Attaching a legal label to a factual claim "will not confer us with jurisdiction." *Jarbough*, 483 F.3d at 189. Each of Alimbaev's arguments do just that.

## B. Alimbaev's Claims

First, Alimbaev argues the BIA has tipped the scale against him by failing to consider favorable facts cited in prior stages of this case. He notes that, this time, the BIA failed to mention explicitly his strong ties to the United States, his payment of taxes, his property ownership, and the hardship his removal would cause his extended family. True enough, but the BIA's precedents establish only that adjudicating a petition for adjustment of status is a case-by-case process, "requir[ing] consideration of all the facts

---

[2] We have jurisdiction despite the BIA's remand of Alimbaev's petition to the IJ for background checks. Although remand to an administrative agency is not ordinarily a final order permitting appellate jurisdiction, "an order is final for jurisdictional purposes when a removability determination has been made that is no longer appealable to the BIA." *Yusupov v. Att'y Gen.*, 518 F.3d 185, 195–96 (3d Cir. 2008). That is the case here.

4

and circumstances involved." *Matter of Edwards*, 20 I. & N. Dec. 191, 195 (B.I.A. 1990). This requires balancing, not exhaustive recitation. *See id.* The BIA's decision here satisfies those requirements, and neither we nor Alimbaev are aware of authority specifically requiring the BIA to list *every* factor relevant to its decisionmaking. So Alimbaev's first challenge has no basis in the law.

Second, Alimbaev disagrees with the weight the BIA assigned to the potential hardship to him and his family. None dispute that Alimbaev remarried after removal proceedings started. But Alimbaev sees colorable error in the BIA's decision to grant less weight to the hardship suffered by his wife because she knew removal was possible when they married. Similarly, he argues that merely being subject to a removal order creates an untenable risk of actual removal to a country within the reach of the Uzbek government, and thus the risk of arrest and torture. Both arguments are not challenges under the law; they ask us to re-weigh the hardship Alimbaev and his family might suffer if he is removed. As explained in *Alimbaev I*, "the BIA is entitled to assign the weight it sees fit to adjustment factors like a petitioner's familial status, and its subsequent balancing of those factors is beyond the purview of our jurisdiction to consider." 872 F.3d at 200, n.10.

Finally, Alimbaev objects to the BIA's references to inaccuracies in his prior applications for adjustment, noting that the IJ concluded that he was unaware of the errors. We addressed this claim in *Alimbaev I*, where we recited the IJ's finding that the circumstances surrounding his applications were "disturbing and negative, but not sufficient to cumulatively outweigh the positive equities in this case." *Id.* at 200, n.10.

5

While the BIA needed to defer to the factual findings of the IJ, it acted "well within its rights" when it "assigned greater significance to the inaccurate immigration applications when adjudicating Alimbaev's application for adjustment of status than did the IJ." *Id.* As before, we see no colorable claim sufficient to invoke our jurisdiction.

## III.

For these reasons, we will dismiss the petition for review.